CASE 39—PETITION EQUITY—OCTOBER 20.

# Reed, &c. v. Welsh, &c.

APPEAL FROM BOYLE CIRCUIT COURT.

1. A THIRD PERSON DEALING WITH AN AGENT MUST LOOK TO HIS POWER and judge for himself of its extent.

   *But where the power to do a thing is clearly given,* but the manner in which the principal intended it to be done is uncertain, both from the writing and the situation and character of the thing to be done, the construction given it by the agent in carrying it into effect, if not unreasonable, will be binding on the principal.

2. DEEDS OF TRUST TO SECURE PAYMENT OF DEBTS.—Section 24 of chapter 80 of the Revised Statutes, declaring invalid sales made under deeds of trust to secure debts, unless the maker of the deed join in the sale or it be made by order of court, was intended to embrace only such writings as vest in the trustee such title to the subject of the trust as would enable him to convey in his own name if the statute had not been enacted.

3. A POWER OF ATTORNEY TO SELL LAND and apply the proceeds to the payment of the debts of the principal therein is not a deed of trust subject to the provisions of section 24, chapter 80, Revised Statutes.

   *Instance.*—Certain parties whose lands were about to be sold for debt executed a writing authorizing and empowering two persons as their agents to sell their property on such terms as should be deemed most beneficial to all parties in interest, and as such agents and attorneys in fact for them, and in their names, place, and stead, to convey all their interest in said lands when sold, with clause of general warranty, and to collect the proceeds and distribute the same, etc. *Held,* that this writing was not a deed of trust within the meaning of the statute referred to. No title to the land passed by it, but merely the power to sell and apply the proceeds in payment of debts. The agent took no interest in the land, but a trust attached to the proceeds of the sale to be distributed.

4. DISMISSAL SHOULD BE ABSOLUTE. — Where a cause was regularly submitted, without reason being shown why the plaintiffs in a cross-petition were not ready for trial, and they chose not to dismiss, but to await the event of the trial, the dismissal should have been absolute.

THOMPSON & THOMPSON, ⎫ . . . . . For Appellants,
F. G. FOX, . . . . . ⎭

CITED

Revised Statutes, chap. 80, sec. 24.
Hill on Trusts, secs. 47–60, 100, 101, 102, 214, p. 41.
Bispham's Principles of Eq., secs. 75, 78, 80, 65, 95.
Story's Eq. 392, 964.   Wills on Trusts, 47–60.
Tiffany & Bullard on Trusts, pp. 209, 210, 211, 784, 786.
Perry on Trusts, secs. 12, 24, 18.
8 Wheaton, 383, Caldwell v. United States.
1 Bibb, 134, McGee v. Thompson.
8 B. Mon. 569, Lane v. Coleman.
6 Dana, 473, Ogden v. Grant.
3 Chan. 265, Pratt v. Ayer.
2 Dana, 79, Muldrow's heirs v. Fox's heirs.
4 Dana, 359, Moore v. Moore.
5 Mon. 154, Breckinridge v. Waters.
2 Bush, 63, Smith v. Vertrees.
1 J. J. Mar. 287, Vanada's heirs v. Hopkins's adm'r.
8 Dana, 199, Dougherty, &c. v. Linthicum.
1 Spruce's Eq. Juris. 506, 497.
2 Flint on Real Prop. 779.
4 Pick. 71, Ames v. Ashley.
4 Sandf. 112, Gaines v. Tradesman's Bank.
2 Watts & S. 71, Morrison v. Beavin.
2 Washburn on Real Prop., pp. 470, 468, 358, 424, 475.
3 J. J. Mar. 236, Whitaker v. Blair.
4 Bush, 43, Belknap v. Martin.
17 B. Mon. 548, Lyons v. Field.
15 B. Mon. 645, City of Louisville v. University of Louisville.
10 Ga. 534, Gordon v. Green.    16 Pick. 222.
16 B. Mon. 241, Ely v. Hair.    2 Atk. 216.
25 Miss. 183, Norman v. Bennett.   General Statutes, p. 845.
19 Wis. 480, White v. Fitzgerald.   Story on Bailments, 286.
15 B. Mon. 625, Butler v. Miller.   Story's Equity, sec. 892.

DURHAM & JACOBS, ⎫ . . . . . . . For Appellees,
HILL & ALLCORN, ⎭

CITED

General Statutes, page 588, section 22.
Blackstone, chapter 20.
Story on Agency, secs. 164, 147, 150, 488, 477, 467, 468.

Hill on Trustees, star page 303.

2 Parsons on Con., 5th ed. p. 492; *Ib.* vol. 1, chap. 7, sec. 3.

1 Bibb, 152, Harrison v. Hobbs.

2 Story's Eq. sec. 964.

1 Perry on Trusts, page 26, secs. 343, 344.

2 Perry on Trusts, sec. 602.

2 Washburn's Real Prop., pp. 453, 616, 617, 610, 484, 473.

3 Washburn's Real Prop., 3d ed. page 333.

8 Wheaton, 174, Hunt v. Rousmanier.

4 Dana, 357, Moore's heirs v. Moore's devisees.

8 Bush, 46, Prather v. McDowell.

6 Dana, 473, Ogden v. Grant.

1 J. J. Mar. 285, Vanada's heirs v. Hopkins's adm'rs.

8 How. 451, Leroy v. Beard.

4 Campbell, 272, Watson v. King.

5 Dana, 513, Hancock v. Byrne.

4 Bush, 43, Belknap v. Martin.

2 Bush, 63, Smith v. Vertrees.

17 B. Mon. 380, Edwards v. Woolfolk's adm'rs.

13 B. Mon. 565, Harris v. Rucker.

15 B. Mon. 617, Butler v. Miller.

13 How. 345, Very v. Levy.

17 B Mon. 543, Lyons v. Field.

THOS. C. BELL, . . . . . For Jackson, the purchaser,

CITED

Revised Statutes, 2 Stanton, pages 230, 463, sec. 23.

Revised Statutes, 1 Stanton, page 262.

Perry on Trusts, sections 304, 328, 343, 499, note 1.

Fisher on Mortgages, side page 147, section 220.

Story on Agency, secs. 74, 150, 164, 477, 488, 489.

General Statutes, 844.

1 Bibb, 152, Harrison v. Hobbs.

5 Mon. 567, The Farmers v. Respass.

2 Met. 338, Hampton v. Morris, &c.

8 Wheat. 174, Hunt v. Rousmanier's adm'r.

1 J. J. Mar. 285, Vanada's heirs v. Hopkins's adm'r.

2 Story's Equity, sec. 964.

1 Parsons on Contracts, chapter 7, section 3.

2 Washburn on Real Prop., sections 26, 27, 11.

2 Burr, 978, Weston v. Mowlin.

1 Hilliard on Mortgages, chap. 8, sec. 1; chap. 11, sec. 1.

4 Johns. 43, Jackson v. Willard.

2 Cow. 195, Wilson v. Trup.
7 Humph. 121, McGaw v. Marshall.
9 Miss. 280, Thayer v. Campbell.
2 Dana, 79, Muldrow v. Fox.
8 B. Mon. 569, Lane v. Coleman.
15 B. Mon. 625, Butler v. Miller.
30 Ind. 158, 167.          Coke on Litt., page 460.
11 John. 534, Runion v. Mersereau.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

The appellants, Josephine Reed and Buena Vista Reed, were the owners of about 666 acres of land in Boyle County, which had been allotted to them in the division of the estate of their father. One parcel of 303 acres belonged to Josephine, one of 243 acres to Buena Vista, who also owned an undivided half of 240 acres allotted to the appellant, Julia A. Reed, as dower. The other half of the latter tract belonged to Joshua B. Reed, who was a co-heir with Josephine and Buena Vista.

A number of executions against Julia A., Josephine, and Buena Vista jointly having been levied on said tracts of land, and the 303 acres belonging to Josephine having been adjudged to be sold to satisfy a mortgage to Rhodes, the three lots were advertised to be sold on the 21st of October, 1872, under said executions and judgment of foreclosure. On that day the three Reeds executed to the appellees, Welsh and Murphy, a paper, which reads as follows:

"Whereas there have been levied on our lands in Boyle County, Kentucky, the following executions [naming them]. And whereas Clifton Rhodes has a judgment for the sale of the lands of Joe Reed on foreclosure of a mortgage for $7,643; and whereas our said lands were advertised to be sold this day by the sheriff of Boyle County in satisfaction of said executions, and John S. Murphy and G. W. Welsh have this day had themselves substituted to the rights of said execution plaintiffs and to the rights of said Rhodes; and whereas said Murphy and Welsh have also agreed with John McClane that

they would save him harmless from liability in any wise on account of his suretyship for Mrs. Julia A. Reed on said debts and other debts, which we now ratify; now, therefore, for the purpose of realizing the amount of the debts aforesaid, and any other debts we may owe (except certain debts assumed by John McClane as surety for Mrs. Julia A. Reed), we, Mrs. Julia A. Reed and Misses Joe Reed and Buena V. Reed, do by these presents authorize and empower the said John H. Murphy and G. W. Welsh, as our agents, to sell on such terms as they think most beneficial to all parties in interest all of our property in this state subject to sale under execution, including household and kitchen furniture." Then follows a detailed description of the land in Boyle County, of which we have already spoken, and the instrument proceeds: "Also our interest in the lands in Marion County, Kentucky, of which John P. Reed died possessed, and we do hereby authorize and empower said Welsh and Murphy, as our agents and attorneys in fact, for us and in our names, place, and stead, to convey all of our interest in said lands when sold with clause of general warranty, and to collect the proceeds and distribute the same as follows: 1. Pay off the debt of Clifton Rhodes, and all interest and cost and any sum he may recover in the litigation now pending in the Boyle Circuit Court; 2. Pay the execution debts of J. B. Wilgus & Co., S. S. Mesner, and Wm. Brewer [the executions recited as levied]; 3. Pay all the other debts that we may owe (except the debts for which John McClane's property was this day sold and the debts this day assumed by said McClane to J. G. Cecil); 4. Retain a fair compensation for their services and reasonable attorney's fees and all cost, and the residue they will pay over to us or subject to our order. But they will not make sale of the Marion County lands unless such sale is necessary for the payment of the debts, cost, or compensation aforesaid. And we waive all irregularities in any of the executions aforesaid, and by these presents bind

ourselves, our heirs, etc., to ratify and confirm all lawful acts of our said agents done in the execution of this power as though the same were done in proper person."

This writing was acknowledged and recorded, and on the 6th of December, 1872, Welsh and Murphy, acting under it, sold the lots of 303 and 240 acres and the undivided half of the dower lot to T. W. Jackson at $40.70 per acre, and executed to him, in the names of the Reeds, a bond for title. They being dissatisfied with the sale, and disputing the power of Welsh and Murphy to make sale of the several lots in gross, but insisting that they should have sold them separately, and refusing to convey and disputing the authority of Welsh and Murphy to do so for them, this suit was brought by Welsh and Murphy to obtain a construction of the writing and a specific execution of the contract with Jackson.

Jackson answered, expressing his willingness to complete the purchase whenever he was assured of a valid title.

The Reeds answered, uniting in the prayer of Welsh and Murphy for a construction of the writing, and, denying that there was any consideration for its execution, attempted to revoke it. They also claimed that as the land did not belong to them jointly, but each lot was owned in severalty, Welsh and Murphy had no authority to sell the several parcels in one consolidated tract. They further alleged that if the lots had been sold separately each would have brought a larger price per acre; and making their answers cross-petitions against Welsh and Murphy, they prayed, in the event the court should hold that they had power to sell all in one tract, for judgment against them for the difference between the price obtained and the price that might have been realized by selling the lots separately.

All the allegations of the cross-petitions were traversed, and none of them were proved or attempted to be proved.

The circuit court adjudged the sale valid and dismissed the

cross-petitions without prejudice, and from that judgment the Reeds prosecute this appeal, and Welsh and Murphy prosecute a cross-appeal from the judgment dismissing the cross-petitions without prejudice, and insist that they should have been dismissed absolutely.

The only ground presented by the appellants in their answer for resisting the specific execution of the sale to Jackson, was that Welsh and Murphy had no authority, under the writing, which all parties then called a power of attorney, to sell the several parcels in one consolidated tract.

That point is still insisted upon, and it is also urged that the instrument of writing under which the sale was made is a deed of trust within the meaning of section 24, chapter 80, Revised Statutes, and that the sale was therefore invalid.

We will dispose of these questions in their order:

1. Had Welsh and Murphy power to sell the three tracts in gross, or were their powers limited to a sale of the tracts separately? It appears that the three tracts originally composed the homestead of the late husband of the appellant, Julia A. Reed, and it does not appear by either allegation or proof that the tracts were of unequal value per acre, or that there were separate improvements on each, nor is there any evidence that the land did not sell for its full value, or that it would have sold for more in separate tracts. There is then no reason why the sale might not have been made as it was, unless, as mere matter of construction, we must say that the writing gave the agents no power to sell as they did.

A third person dealing with an agent must look to his power and judge for himself of its extent.

The writing in question gave full and unquestioned power to sell two of the tracts and an undivided half of the third, but as to the particular manner in which the sale was to be made, whether in gross, by the acre, in parcels, or as a whole, the appellants gave no directions, but they gave their attorneys

power to " sell on such terms as they thought most beneficial to all parties in interest," and to convey the same " with clause of general warranty." The thing to be done was to sell the land, and this is admitted to have been clearly within the power, but as to the mode of selling the power is silent, except that it was to be done on such terms as the agents deemed best. Whether the parties intended a sale of the whole in one body could not be certainly determined by an inspection of their written power. As we have already seen, there are no extraneous facts which seemed to render a sale in one way particularly preferable to a sale in the other. We then have a case where the power to do the thing in question is undoubtedly given; but it may be that the manner in which the principals intended it to be done is uncertain, both from the writing and from the situation and character of the thing which was the subject of the power. With reasonable attention to the language of the power, and the situation and character of the land, a third person may reasonably have come to the conclusion that the attorneys had power to sell all the tracts in one body, and " although upon a more refined and critical construction the court might be of opinion that a different construction would be correct," still, to take the most favorable possible view of it for the appellants, its construction is ambiguous, and both the agents and the purchaser having construed it as giving power to sell all in one tract, and acted on that construction, the appellants are bound by it. (Very v. Levy, 13 Howard S. C. 359; Le Roy v. Beard, 8 Howard S. C. 451; Loraine v. Cartwright, 3 Wash. C. C. R. 151.) "Such an instrument is generally to be construed, as a plain man acquainted with the object in view, and attending reasonably to the language used, has in fact construed it." Finding power to sell the whole land to pay debts owing jointly by the owners, with no specific directions as to the manner of sale, and finding the land, which had formerly been one farm, lying

in a body without, so far as appears, any visible evidences on it of a partition, with no separate improvements on the several tracts, and no special reasons why it should be sold in several rather than in one tract, the purchaser was not bound to consult an attorney, or to look for subtle rules of law, or to make a hypercritical analysis of the language of the power, but must be protected in his purchase made in good faith.

It was in the power of the appellants, if they deemed it important that the land should be sold in parcels, to have so directed, and thus to have made the mode of the execution of the power plain; and as by their failure to do so the appellees have by a not unreasonable construction come to a different conclusion, and acted on it so that now either they or the appellants must suffer, the loss must fall upon the latter, whose failure to give more specific directions has caused the mischief.

What has been said is equally applicable to the objections taken by the counsel for the appellants, that by a joint sale they are subjected to the responsibility of a joint warranty, and that as they have a right, as between themselves, to contribution, there is no way of determining how much the land of each was worth, so as to form the basis of a settlement between them.

If this difficulty was more serious than it appears to us to be, it could not be allowed to prejudice the rights of a third person, who, as we have already said, has acted upon the rational construction of a written power of attorney.

The case of Dougherty v. Linthicum (8 Dana, 199), relied on by counsel for the appellants, does not support their theory of this case, but when carefully considered is rather an authority to support the view we have taken of it.

In that case land worth more than $2,000, and consisting of two contiguous tracts, to one of which the defendant in execution had an unencumbered title, the other being under

mortgage, was levied on and sold under execution for five dollars. But while the court strongly intimates that the sale should be set aside upon a direct proceeding for that purpose, it was distinctly held that the sale was not void.

The case of Vanada v. Hopkins's adm'r (1 J. J. Marshall, 285) was also relied on, but we perceive nothing either in the facts of that case or in the general rules laid down by the court at all inconsistent with the view we have taken of this case.

It is true the court say it is the duty of one dealing with an agent to inquire into the extent of his authority, and that he deals with the agent at his peril, but it is nowhere intimated that if the mode of execution is left by the power uncertain, and the agent and a purchaser from him adopt a construction rational in itself, that the act of the agent will be void because the court may, upon a rigid and critical construction, come to a different conclusion. In that case the power was to sell a designated tract of land, and the agent sold only a part of it, and the court held that the act was authorized by a rational construction of the power, and was valid.

The remaining question is whether the writing executed by appellants is a deed of trust within section 24 of chapter 80 of the Revised Statutes. That section reads as follows:

" No sale made of any property, by a trustee, by virtue of any deed of trust or pledge to secure the payment of debts, shall be valid, nor shall the conveyance by such trustee pass the title of the property specified in such deed or pledge, unless the sale thereof shall be in pursuance to a decree or order of a court, or the maker of such deed or pledge shall join in a writing evidencing the sale."

By declaring that " the conveyance by the trustee shall not pass the title unless," etc., it is manifest that the legislature was then contemplating cases in which, but for the statute they were enacting, the conveyance by the trustee in his own name

would have passed the title. Without this assumption the language is meaningless. If the trustee has no title it would be absurd to say that he should not convey title. It seems to us therefore that the rational construction is that only such writings are embraced by the statute as vest in the trustee such title to the subject of the trust as would enable him to convey in his own name if the statute had not been enacted.

This conclusion is fortified by that universal rule for the construction of both statutes and contracts which makes the ascertainment of the intention of the legislature in the one case, and of the parties in the other, the sole object of all construction. The parties to the writing under consideration clearly intended to confer upon Welsh and Murphy power to sell and convey, in the names of the appellants, without waiting for the decree or order of a court, and without any further action in the premises by the appellants in person; and to hold that the writing conferred no authority to sell unless the requirements of the statutes were complied with, would, beyond any question, defeat the intentions and expectations entertained by all parties at the time.

But, aside from this consideration, we regard the writing as not within the statute. It lacks some of the essential elements of a deed of trust, no matter how it may have been understood at the time by the parties. By a deed of trust the property is changed and the title is vested in the grantee. (Harrison v. Hobbs, 1 Bibb, 152; Hunt v. Rousmanier, 8 Wheaton, 174.)

That no title to the land passed by the writing in question is clear. It contains no words of grant whatever. It is true Welsh and Murphy had an interest in the execution of the power and also a lien on the land, but the *power* gave them no interest in it whatever. If they can be said to have had any interest in the land, they derived it through the levy of the executions and the mortgage to Rhodes and his judgment of

foreclosure, and the assignments to them of the benefit of the executions and the judgment. They derived nothing from the appellants except power to sell the land and to apply the proceeds to the satisfaction of their debts.

It is true that so far as Welsh and Murphy were concerned the power could not be revoked, but it does not thence follow that they took an interest in the land by virtue of the power. Hunt v. Rousmanier, *supra*, is a direct authority upon this point. Hunt loaned Rousmanier money, and as security for repayment took from him a power of attorney to sell two vessels owned by Rousmanier, but which were then at sea. Before a sale was made Rousmanier died insolvent, and Hunt filed his bill to compel his administrators to join with him in a sale of the vessels; but the court held that as the power contained no words of conveyance or assignment, the title remained in Rousmanier, and the power, although irrevocable by him in his lifetime, was revoked by his death. And as a consequence it was held that Hunt had no claim under the power upon the vessels for the security of his debt. In that case, as in this, it was argued that there was a power coupled with an interest, and that, as such a power would survive, it might be executed after the death of the donor or maker.

The court conceded that, if it was a power coupled with an interest, this was true, and then proceeded to inquire whether it was such a power or not, and upon this point said: "A power coupled with an interest is a power which accompanies or is connected with an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest' an interest in that which is to be produced by the exercise of the power, then they are never united. The power to produce the interest must be exercised, and by its exercise is extinguished. The power ceases when the interest commences, and therefore can not, in accurate law language, be said to be coupled with it."

In that case, as in this, the power was given to secure the
payment of a debt.  It was there held that the *power* gave
Hunt no interest in the subject of the power; and the same is
true in this case.  If Hunt had made a sale in the lifetime of
Rousmanier, he would have had an interest in the proceeds,
but he never had an interest in the vessels.  So in this case
Welsh and Murphy by the exercise of the power acquired an
interest in the purchase-money, but they never had any interest
in the land derived from the power.

Nor is this conclusion in conflict with any thing in the
opinion of this court in Lane v. Coleman (8 B. Mon. 569).
Lane had acted as the agent of Coleman in conducting a
burdensome litigation, whereby Coleman became indebted to
him.  Coleman made a power of attorney to Turner, directing
him out of the proceeds of the suits to pay all cost and ex-
penses of the suits, including attorneys' fees, and to pay the
residue to Harris.  A litigation arose between Harris and
Lane in regard to the proceeds arising from the exercise of the
power given to Turner—that is, as we understand the case,
after Turner had sold the land, which was the subject to which
his power of attorney related, Lane claimed that he was
entitled, under the directions contained in the power, to be
paid for his services as agent in conducting the suits out of the
fund arising from the sale; while Harris claimed it not only
under the direction contained in the power to pay him the resi-
due after paying all costs and expenses of the suits, including
attorneys' fees, but also under a separate paper executed by
Coleman transferring the fund to him.

In passing upon the conflicting claims of Lane and Harris
to the fund arising from the sale made by Turner the court
said: The power of attorney "provides in effect for the ap-
propriation of certain property of the grantor to the satisfac-
tion of certain just claims against him, and then for the benefit
of Harris.  It is in effect a deed of trust, first for the benefit

of certain just claimants or creditors, and, after they are satisfied, for the benefit of Harris," etc.

There was no question in that case as to the extent of the authority of Turner to make sales. The sole question was as to the disposition of the proceeds of the sales. As to these the paper undoubtedly created a trust, and was not inappropriately called a deed of trust. So in the case at bar, the proceeds of the sale made under the power are held in trust for the purposes indicated; but it does not follow that because a trust attaches to the funds in the hands of Welsh and Murphy, which they might be compelled to apply according to the directions contained in the power, that therefore they took an interest in the land under or by virtue of the power.

The statute in question was enacted in the interest of debtors, and should not be construed so as to make it detrimental to them. It may, and doubtless does, often happen that the interests of an embarrassed debtor imperatively demand that he should not be disabled to make such an arrangement as was made in this case without subjecting his estate or the person chosen to act for him to the operation of the statute. This case illustrates that necessity. The appellants' lands were about to be sold under legal process; the largest part must have been sold upon a credit of three months, and the residue on credits not to exceed an average of twelve months on the whole. The sale of real estate in the country for such large sums upon credits so short might have proved ruinous. Welsh and Murphy were not their creditors, and seem to have been chosen to make sales and pay the debts in order to avoid the consequences of forced sales upon short time. None of the parties intended or expected the estate to fall under the statute; and if such transactions are to be brought within the statute contrary to the design and expectation of parties, such expedients for relief as that resorted to in this case will be rendered impracticable, because it will often be difficult, if not impossible, to find those

who are able and willing to incur such risks for the benefit of others.

These considerations furnish additional reasons for holding the writing not to be a deed of trust within the statute.

3. We perceive no reason why the cross-petitions of the appellants should not have been dismissed absolutely. The issues had been fully made up more than ninety days before the submission of the cause; and as the cause was regularly submitted without any reason being shown why the appellants were not ready for trial, and as they chose not to dismiss, as they might have done, but to await the event of the trial, their cross-petitions should have been dismissed absolutely.

Wherefore the judgment is affirmed on the original and reversed on the cross-appeal, and the cause is remanded, with directions to dismiss the appellants' cross-petitions absolutely.