CASE 69—PETITION EQUITY—DECEMBER 7.

## Abbott v. Yeager, &c.

### APPEAL FROM SHELBY CIRCUIT COURT.

FAILURE OF MAKER OF DEED OF TRUST TO UNITE WITH TRUSTEE IN CONVEYANCE OF TRUST PROPERTY.—Section 22 of article 1, chapter 63 of the General Statutes (now section 2356 of the Kentucky Statutes), which provides that no sale or conveyance of property by virtue of a deed of trust shall be valid unless the maker of the deed of trust shall unite in a writing evidencing the sale, has no application where it appears from the face of the instrument and from the transaction itself that the writing creating the trust was not intended to be a revocable instrument, but was designed to pass the absolute fee that the trusts might be executed. Therefore where there had been a decree for the sale of land to satisfy certain liens upon it, and in order to avoid a judicial sale the lien-holders united with the owners of the land in a deed to a trustee empowering him to dispose of the land at private or public sale, a sale and conveyance by the trustee passed the title to the purchaser, although the makers of the trust deed did not unite in the conveyance or in any writing evidencing the sale.

JAMES S. PIRTLE, J. C. BECKHAM AND G. G. GILBERT FOR APPELLANT.

1. The deed of trust in controversy conveyed the fee simple title to the trustee, and vested it with full power to sell and convey the property conveyed to it. The deed has none of the elements of a mortgage. It imposed upon the trustee several active trusts, one of which could not possibly be executed without a sale.

(Soutter v. Miller, 15 Fla., 627; Woodruff v. Samuels, 19 Ohio, 216; McDonald v. Kellog, 30 Kan., 170; Koch v. Briggs, 14 Cal., 261; Reed v. Welsh, 11 Bush, 450; Prather v. McDowell, 8 Bush, 57; Ogden v. Grant, 6 Dana, 473; Perry on Trusts, sec. 764; Halley &c., v. Winchester Diamond Lodge, 97 Ky., 438.)

2. The defendants do not belong to the class of persons provided for in the statute because they are in no sense debtors, but are judgment creditors, and the sale was made for their benefit as such, pursuant to a plan devised and agreed upon by themselves. (Perry on Trusts, sec. 602.)

3. By their conduct in participating in the sale, holding out the trust company to the world as the owner of the fee in this property, with power to sell and convey, and acquiescing in every act of the trust company exercised under the deed of trust, including the two auction sales, and conveyance to Gibson for a part of the property, they are now estopped from asserting any claim against the title of the plaintiff. (Endlich on Int. of Statutes, secs. 448, 593; Herman on Estoppel, secs. 795, 932, 935; 26 Am. and Eng. Enc. of Law, pp. 863, 934; 7 Am. and Eng. Enc. of Law, p. 18; Connolly v. Branstler, 3 Bush, 702.)

L. C. WILLIS FOR APPELLEES.

1. The paper called a deed of trust was and is in fact a mortgage. (Gifford v. Mullins, 9 Ky. Law Rep., 714; Ballard's Kentucky Law of Real Property, sec. 176; Seiler v. Northern Bank of Ky., 128.)

2. If the paper is a deed of trust with power to sell and convey, such as it purports to be, it is such a deed of trust as falls under the provision of the statute of 1820 (Ky. Stats., sec. 2356) and the trust company could not make to appellant a conveyance transferring a good title without a decree of court, or the makers joining in the deed. (Prather, &c., v. McDowell, &c., 8 Bush, 59; Lyons v. Field, 17 B. Mon., 549.)

Reed, &c., v. Welsh, &c., 11 Bush, 450, Ogden v. Grant, 6 Dana, 473, and Halley &c., v. Winchester Diamond Lodge, 97 Ky., distinguished from this case.

3. There is no estoppel made out by appellant. (Bigelow on Estoppel, p. 570; Ballard's Ky. Law of Real Property, sec. 802; Louisville, &c., R'y Co. v. Stephens, &c., 96 Ky., 401; Irvine v. Scott, 85 Ky., 260; Anderson v. Hubbell, 93 Ind., 573; s. c. 47 Am. Rep., 304.)

4. The grossly inadequate price for which the land sold is sufficient ground itself for declaring the sale invalid.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

H. C. Yeager at his death owned a valuable tract of land in the county of Shelby that passed to his heirs at law. There existed on this land liens for a large sum of money that had been reduced to a judgment by the parties holding the liens and a sale of the land adjudged to satisfy the lien creditors.

In the year 1892 a deed of trust was executed by the lien creditors and the heirs of Yeager invested with the legal title that had the effect, and such in fact was its purpose, to avoid the judicial sale and enable the trustee to dispose of the land at private or public sale, all parties deeming such a step necessary to the protection of their interests. The Fidelity Trust Co. was made the trustee, and the parties in interest all being adults passed to the trustee the absolute fee to enable it to make a sale of the land so as to pass the title to the purchaser.

The trustee was to advance, and did advance, the sum of $6,000 to satisfy one of the lienholders, Louise Williamson, and was then empowered to sell the land, first, to reimburse the trustee in the moneys advanced and the balance of the proceeds to be reinvested and the income applied to the support of the mother of the appellees during her life, and at her death to be applied to the satisfaction of the lien that seven of the appellees held on the land that had already been adjudged inferior to the lien of Mrs. Williamson.

The trustee was also empowered to rent out the lands, pay taxes, insurance, etc., until a sale was made, and for this purpose has surrendered the possession, and did in fact rent the land for the period of eighteen months. Several fruitless attempts were made to sell this land privately and publicly, and finally a sale of a part of the land was made to one,

Gibson and a deed executed to him by the trustee and the purchaser placed in possession.

After the sale to Gibson it was concluded by many of the parties in interest, or if not by the trustee, to have a sale made at public auction of this land left unsold, and after proper advertisements and with notice to the parties in interest the land was sold and purchased by the appellant, Abbott, at the price of $22 per acre. This was the best and highest bid offered and was accepted, and a conveyance made him by the trustee. There was competitive bidding, and no collusion or unfairness in the bidding or sale is shown to have existed on the part of the purchaser, and the sale certainly could have been enforced and the purchaser compelled to comply with his bid. There was some dissatisfaction as to the price paid for the land on the part of the heirs, for the reason, as is alleged, that the land, as they understood, was not to be sold for less than $25 an acre, and that the trustee had agreed that it should not go for a less sum. The proof on this subject is conflicting, as well as that regarding the value of the land, but the purchaser was in nowise connected with it, and there was no such sacrifice of the land as would imply that an undue advantage had been taken of either the trustee or the parties in interest by the appellant. It does appear that he at one time offered as much as $27 an acre for the land at a public offering, but he says, and the proof sustains him, that there was by-bidding and no real competition, and before the land was declared sold withdrew his bid.

Some of the parties in interest advised that this land be sold on the day it was sold. The witnesses, or many of them, say the land in its condition sold for its full value, and the proof shows the appellees were willing to take $25 for it. The appellant, after he obtained his deed, and learning, in fact, of the dissatisfaction of the appellees as to the sale

before he obtained it, filed his petition to quiet his title and asking the chancellor to pass upon the right of the trustee to make him the deed under which he has entered into pos-session.

The only defense made by the appellees to the title of the appellant is the statute of 1820, now a part of the General Statutes, that provides: "No sale made of any real estate by a trustee, by virtue of a deed of trust or pledge to secure the payment of debts, shall be valid, nor shall the convey-ance by such trustee pass the title of the property specified in such deed or pledge unless the sale thereof shall be in pur-suance of a judgment of court or the maker of such deed or pledge shall join in a writing evidencing the sale." (Gen. Stats., chap. 63, art. 1, sec. 22; Ky. Stats., sec. 2356.)

In construing this statute and the character of trusts or pledges that are being constantly made in business transac-tions, it is often difficult to determine what classes of trusts are embraced by its provisions, and, while it was enacted for the benefit of the debtor and to prevent a sacrifice of his property by his trustee, when empowered to sell to pay debts, the statute should not be so construed as to prevent any arrangement by the debtor to avoid the cost of litigation, or to so divest himself of title as to better his condition by placing his property in the hands of others, with the full power of sale, in order to the execution of the trusts created by the conveyance. In the case of a mere mortgage, where the condition is complied with by which the title reverts to the real owner, there can be no doubt that his wishes should be consulted and his written consent obtained before the sale of his property is made and he divested of his title, but where it appears from the face of the instrument and the transaction itself that the writing creating the trust was not intended to be a revocable instrument but designed to pass

the absolute fee, that the trusts might be executed, there is no reason for withholding the power of sale, when, in the judgment of the trustee, the period or necessity for the sale has arrived.

As said by the court in Woodruff v. Robb, &c.,19 Ohio, 216: "There is a difference between a conveyance to a trustee to raise money to pay debts and other disposition of the proceeds of sale,and a conveyance for the purpose of securing a debt in case of default by the debtor in a limited time.  In the first case, the title is vested absolutely in the grantees for the purposes of the trust, and in the latter, if the debtor performs his obligation, he retains his property."

In the case of a mortgage where the grantor fails to comply with its conditions, while the title does not become absolute in the grantee, the right of foreclosure exists, as also the right of the grantor to redeem;and,when the power of sale is given the grantee or creditor in such cases by the terms of the instrument, the statute intervenes and says to the creditor you shall not be your own chancellor, but must apply to a court of equity for a judgment of sale, unless the written consent of the grantor is obtained.   In the case before us it is evident the right to redeem was not contemplated by any of the parties, or supposed to exist.   The liens upon the land amounted to about $18,000, nearly double the value of the land, and while the amount of the lien does not control the decision of the question, it goes far to show, where there is any room for construction, that the parties did not regard the writing as a mere mortgage, but one that was irrevocable, unless by the consent of all the parties.   Here was a holding in trust to pay the trustee first $6,000, and from the remaining proceeds to apply the interest to the support of the wife of the intestate, and at her death to pay it to those mentioned in the instrument.

The parties making the instrument were not real debtors. Some were creditors, and others had an interest in the land upon which the lien existed.   No personal liability had been assumed by the parties, but all deemed it best to abandon or avoid the sale ordered by the chancellor and take control of the disposition of the land through the intervention of a trustee; and the fact that the trustee loaned them $6,000 did not make the instrument a mere mortgage, although it was secured by it.   The parties are now, however, seeking for a judicial order of sale, when, by the very terms of the trust, such a sale was to be avoided and the trust as created enforced.

It seems to us plain that this trust could in the first place be enforced by the chancellor; and, in the second place, if the appellant had refused to comply with the terms of sale, the trustee could have compelled him in a court of equity to comply with his contract, and it must therefore necessarily follow that this sale passed the title to the appellant and that he was entitled to a conveyance from the trustee.   If the contract was binding on the purchaser, it must be held valid as to the trustee, and if the trustee has been guilty of bad faith toward the beneficiaries, it is no fault of the purchaser, but creates a liability on the part of the trustee to the parties in interest.   We do not mean to say that any such bad faith is shown in this record, or that there was any sacrifice of the property, but if the appellees have any cause of complaint it is against the trustee, and not against the appellant, who made his purchase at a public sale of the land without collusion with any one to prevent fair and competitive bidding.

In the case of Reed v. Welsh, 11 Bush, 450, judgment debts and executions had been levied on large and valuable tracts of land.   In order to prevent the judicial and execution sales

and a sacrifice of their property the debtors executed a power to Welsh and Murphy authorizing them to sell the land. They sold the land, executing a bond for title, and the debtors or parties in interest made the question as to the validity of the sale without the consent of the debtors, as required by the statute, and this court held that the sale was valid, saying that Welsh and Murphy "seem to have been chosen to make sales and pay the debts in order to avoid the consequences of forced sales, *   *   and if such transactions are brought within the statute, contrary to the design and expectation of the parties, such expedients for relief as that resorted to in this case will be rendered impracticable, because it will often be difficult, if not impossible, to find those who are able and willing to incur such risks for the benefit of others." It may be said that the writing to Welsh and Murphy was a mere power of sale to pay debts, yet it comes much nearer the evil intended to be cured by the statute than the case before us. In this case a judicial sale was not only avoided, but trusts created that must be enforced, unless cancelled, and a plain intent not to mortgage, but to pass the absolute fee, that the trust imposed might be executed.

It is said the appellant had notice of the dissatisfaction of the appellees before he obtained his deed, and while this may be so it was after his purchase and when he was entitled to a specific performance on the part of his vendor. It results, therefore, the chancellor erred in disregarding the sale, and the judgment is reversed, with directions to enter a judgment holding that the conveyance by the trustee passed the title, so far as these appellees are concerned, to the land the title to which is in controversy. (Prather v. McDowell, 8 Bush, 46; Ogden v. Grant, 6 Dana, 473; Halley, &c., v. Winchester Diamond Lodge, 97 Ky., 438.)