**BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY; Suzy McDanal, R.A., "Chris" Christensen, and James Sullivan, individually and in their capacities as members of the Board of County Commissioners of Douglas County, Colorado; and Ed Tepe, individually and in his capacity as the Director of Planning and Community Development in Douglas County, Colorado, Petitioners/Cross–Respondents,**

v.

**John SUNDHEIM and JoAnn Scoggin Sundheim, Respondents/Cross–Petitioners,**

and

**Dorothy Rudd and Robert Rudd, Respondents.**

**No. 95SC330.**

Supreme Court of Colorado, En Banc.

Oct. 28, 1996.

Senter Goldfarb & Rice, L.L.C., Steven J. Dawes, Susan E. Dallas, Denver, for Petitioners/Cross–Respondents.

Massey Showalter & Marsh, P.C., Richard A. Marsh, Denver, for Respondents/Cross–Petitioners John Sundheim and JoAnn Scoggin Sundheim.

No Appearance on Behalf of Respondents Dorothy and Robert Rudd.

Cornish and Dell'Olio, Craig M. Cornish, Melissa L. Phillips, Michael W. Standard, Colorado Springs, for Amicus Curiae American Civil Liberties Union Foundation of Colorado, Inc.

Hall and Evans, L.L.C., Josh A. Marks, Denver, for Amicus Curiae Colorado Counties, Inc.

Colorado Municipal League, David W. Broadwell, Denver, for Amicus Curiae Colorado Municipal League.

Gale A. Norton, Attorney General, Timothy M. Tymkovich, Solicitor General, Garth C. Lucero, Deputy Attorney General, Timothy R. Arnold, Deputy Attorney General, Civil Litigation Section, Tort Litigation, for Amicus Curiae State of Colorado.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Sundheim v. Board of County Commissioners*, 904 P.2d 1337 (Colo. App.1995), to determine whether the thirty-day filing limitation contained in C.R.C.P. 106(b) applies to actions where a claim for money damages is asserted under 42 U.S.C. § 1983 (1994). We also granted certiorari to determine if this court has the authority to recognize an implied damages action in cases where citizens allege that government entities have violated their state constitutional rights. The court of appeals held that a § 1983 claim can exist separately from a C.R.C.P. 106(a)(4) cause of action, thereby rendering C.R.C.P. 106(b)'s thirty-day filing requirement inapplicable. The court of appeals also held that C.R.C.P. 106(b) foreclosed any claims based solely upon the Colorado Constitution. We affirm.

## I.

John and JoAnn Scoggin Sundheim (the Sundheims) own property in Douglas County, Colorado, on which they have operated a horse boarding and training business known as Parker Valley Farm. On January 23, 1989, the Sundheims submitted a Use by Special Review Permit application (the application) to the Douglas County Planning Department (the Department), requesting permission to continue the commercial boarding and training of hunter/jumper horses on Parker Valley Farm.[1]

On January 16, 1990, the Board of County Commissioners (the board) adopted a resolution denying the application. However, based upon the observations of a hired private investigator, the board .determined that commercial boarding and training activities were ongoing at Parker Valley Farm. On February 27, 1991, Ed Tepe, the Douglas County Director of Planning and Community Development, sent a letter to the Sundheims directing them to cease and desist from all commercial activities on Parker Valley Farm. The Sundheims filed suit on December 11, 1991, nearly two years after the board's January 16, 1990, resolution.

The Sundheims' complaint asserted four claims for relief, two of which are relevant here. Their first claim for relief alleged that the board's denial of the application violated the Sundheims' due process and equal protection rights under the Fourteenth Amendment of the United States Constitution and § 1983. Their second claim for relief alleged that, by denying the application, the board had violated the Sundheims' due process and equal protection rights under article II, sections 3 and 25, of the Colorado Constitution.[2]

The board filed a motion to dismiss under C.R.C.P. 12(b)(5). The trial court found that because the Sundheims' complaint was not filed within thirty days of the board's resolution, their claims were foreclosed by application of C.R.C.P. 106(b). Accordingly, the trial court granted the board's motion to dismiss.

The Sundheims appealed. The court of appeals reversed the trial court's dismissal of the Sundheims' § 1983 claim, holding that damage claims brought under § 1983 may exist separately from the 106(a)(4) cause of action. The court of appeals then affirmed the trial court's dismissal of the Sundheims' state constitutional claims based upon the application of C.R.C.P. 106(b).

## II.

◼ The board argues that an action challenging a quasi-judicial decision of a governmental body and requesting money damages

---

1. The application was opposed by Dorothy and Robert Rudd, named defendants and owners of property adjacent to Parker Valley Farm; however, our grant of certiorari is limited to actions taken by the board.

2. The Sundheims also alleged that the board and others conspired to deprive them of their rights in violation of 42 U.S.C. § 1985 (1994) and that the board, county officials and others had violated their right to privacy.

under § 1983 must be brought within the thirty-day filing limitation set forth in C.R.C.P. 106(b). We disagree.

C.R.C.P. 106(a)(4) provides in part:

Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law:

(I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

. . . .

(IX) In the event the court determines that the governmental body, officer or judicial body has failed to make findings of fact or conclusions of law necessary for a review of its action, the court may remand for the making of such findings of fact or conclusions of law.

■ The denial of a special use permit represents a quasi-judicial action under C.R.C.P. 106(a)(4). *Colorado State Bd. of Land Comm'rs v. Colorado Mined Land Reclamation Bd.*, 809 P.2d 974, 981 (Colo. 1991). C.R.C.P. 106(a)(4) provides the exclusive remedy for reviewing a quasi-judicial decision made by a government entity. *Colorado State Bd. of Land Comm'rs*, 809 P.2d at 982; *Snyder v. City of Lakewood*, 189 Colo. 421, 427, 542 P.2d 371, 375 (1975), *overruled in part, Margolis v. District Court*, 638 P.2d 297 (Colo.1981). For this reason, a C.R.C.P. 106(a)(4) complaint must include all causes of action, including constitutional claims, in a

single C.R.C.P. 106(a)(4) action. *Norby v. City of Boulder*, 195 Colo. 231, 236, 577 P.2d 277, 281 (1978); *Snyder*, 189 Colo. 421, 542 P.2d 371. Additionally, C.R.C.P. 106(b)[3] requires that a complaint seeking C.R.C.P. 106(a)(4) review must be filed within thirty days of the final decision by the government entity.[4]

■ The analysis shifts, however, when a complainant asserts a claim for money damages under § 1983 because claims under § 1983 exist as a "uniquely federal remedy" that "is to be accorded a sweep as broad as its language."[5] *Felder v. Casey*, 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988) (*quoting Mitchum v. Foster*, 407 U.S. 225, 239, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972), and *United States v. Price*, 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966)). The United States Supreme Court has held that when a state places procedural barriers that deny or limit the remedy available under § 1983, those barriers must give way or risk being preempted. *Felder*, 487 U.S. at 144-45, 108 S.Ct. at 2309-10.

In *Felder*, the United States Supreme Court held that a Wisconsin statute requiring would-be plaintiffs to provide government entities with notice within 120 days of an alleged injury was inapplicable in an action brought under § 1983. *Felder*, 487 U.S. at 153, 108 S.Ct. at 2314. While recognizing that important policy considerations supported the notice of claim statute, the Supreme Court nevertheless demanded that these interests recede, explaining:

3. C.R.C.P. 106(b) provides in part:

If no time within which review may be sought is provided by any statute, a complaint seeking review under subsection (a)(4) of this Rule shall be filed in the district court not later than thirty days after the final decision of the body or officer.

4. In *Snyder*, we underscored the importance of C.R.C.P. 106(b)'s thirty day filing requirement:

The present controversy has continued for over two years, the effect of which is that the surrounding landowners, the Church, the City and many other interested persons and organizations have been living under a cloud of uncertainty which is not compatible with modern

comprehensive planning. The interests of all will be served if a challenger to a rezoning determination must prosecute all his causes in one certiorari action and bring it within 30 days of "final action" unless a statute or municipal ordinance provides otherwise.

*Snyder*, 189 Colo. at 428, 542 P.2d at 376 (citation omitted).

5. Actions pursuant to 42 U.S.C. § 1983 are subject to state statutes of limitation for personal injury claims to foster uniformity and certainty among the states. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Colorado, actions brought under § 1983 are subject to a two-year statute of limitations. *See* § 13-80-102, 6A C.R.S. (1987).

Sound notions of public administration may support the prompt notice requirement, but those policies necessarily clash with the remedial purposes of the federal civil rights laws.

*Id.* at 145, 108 S.Ct. at 2310.

Similarly, imposing C.R.C.P. 106(b)'s thirty-day filing deadline on the Sundheims' § 1983 action represents a procedural barrier that hinders the exercise of their federal rights. While we recognize that strict enforcement of the thirty-day limitation serves to promote government efficiency and sound municipal planning, those interests must give way to the compelling federal interest of giving § 1983 actions a broad berth.[6]

For this reason, the district court erred when it dismissed the Sundheims' § 1983 claim for their failure to file the claim within thirty days as required by C.R.C.P. 106(b). Thus, the court of appeals' holding that a § 1983 damages claim may exist separately from a C.R.C.P. 106(a)(4) action is affirmed.

### III.

■ In addition to their § 1983 claim, the Sundheims and an amicus curiae[7] urge this court to recognize an implied cause of action in damages for the violation of rights secured by the Colorado Constitution. To support their argument, the Sundheims point to an absence of state legislation in this area, specific provisions of the Colorado Constitution, and this court's inherent authority to fashion remedies that vindicate personal rights. We refuse to recognize an implied cause of action in this case.

### A.

■ The Sundheims argue that this court has the power to recognize a remedy for violation of every right, particularly where the legislature has not yet acted. However, the absence of statutory relief for a constitutional violation does not, by itself, give rise to an implied damage remedy. *See Schweiker v. Chilicky,* 487 U.S. 412, 421–22, 108 S.Ct. 2460, 2466–67, 101 L.Ed.2d 370 (1988); *see also Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (no implied damage remedy available even in the absence of a meaningful statutory remedy).

■ The Colorado Governmental Immunity Act (CGIA), §§ 24–10–101 to –120, 10A C.R.S. (1988 & 1996 Supp.),[8] indicates that the General Assembly has carefully defined the limits of a private citizen's right to redress for the actions of government entities and officials.

Section 24–10–102, 10A C.R.S. (1988), sets forth the CGIA's declared policy:

It is recognized by the general assembly that the doctrine of sovereign immunity, whereunder the state and its political subdivisions are often immune from suit for injury suffered by private persons, is, in some instances, an inequitable doctrine. . . . The general assembly also recognizes that the state and its political subdivisions provide essential public services

---

**6.** We recognized the compelling interest served by 42 U.S.C. § 1983 actions in *Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981), where we explained:

The two principal policies underlying a § 1983 action are compensation and deterrence. Where the government itself becomes the source of danger to an individual's rights, in the absence of some effective mode of redress, the person would be defenseless in the face of official lawlessness. The § 1983 remedy serves to supplement available state remedies. Because the wrongdoer acts with special authority under color of his governmental office or employment, the danger of his misuse of power is greater for those subject to it than would be the case if the wrongdoer were acting merely as an individual. His potential liability for violation of another's federal rights serves to restrain illegal behavior and to en-

courage good faith performance of official duties.

*Espinoza,* 633 P.2d at 464 (citations omitted).

**7.** The American Civil Liberties Union Foundation of Colorado, Inc., as amicus curiae, filed a brief urging the recognition of an implied cause of action. Colorado Counties, Inc., and Colorado Municipal League, as amici curiae, filed a brief opposing recognition of an implied cause of action.

**8.** As a means of providing relief to citizens injured by the otherwise immune acts of government entities and officials, the CGIA waives immunity in certain circumstances. However, this waiver does not specifically include the violation of a citizen's state constitutional rights. *See* § 24–10–106, 10A C.R.S. (1988 & 1996 Supp.).

and functions and that unlimited liability could disrupt or make prohibitively expensive the provision of such essential public services and functions. The general assembly further recognizes that the taxpayers would ultimately bear the fiscal burdens of unlimited liability and that limitations on the liability of public entities and public employees are necessary in order to protect the taxpayers against excessive fiscal burdens.

The CGIA clearly sought to balance the interests of citizens seeking relief from governmental abuses of power against the public interest of maintaining an efficient and fiscally responsible government. While it does not address the issue of constitutional violations directly, the CGIA clearly defines the boundaries within which aggrieved citizens may obtain relief.

Similarly, in adopting the Colorado Rules of Civil Procedure, we have balanced competing concerns in C.R.C.P. 106(a)(4). C.R.C.P. 106(a)(4) provides citizens with judicial review and prevents decision-making bodies from abusing their discretionary power. However, record review and C.R.C.P. 106(b)'s thirty-day filing deadline balance a citizen's right to have his or her case heard against the need for efficient municipal planning. See Snyder, 189 Colo. at 428, 542 P.2d at 376.

The CGIA and C.R.C.P. 106(a)(4) clearly support an intent on behalf of the general assembly and this court to balance the rights of aggrieved citizens against legitimate government concerns. Creating a new constitutional cause of action could seriously alter the delicate balance between these competing policies.

**B.**

■ Article II, section 6, of the Colorado Constitution provides:

Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay.

The Sundheims interpret article II, section 6, to authorize the courts of this state to provide remedies when citizens suffer an injury to themselves or their property.

Article II, section 25, of the Colorado Constitution provides:

No person shall be deprived of life, liberty or property, without due process of law.

By reading article II, section 6, together with article II, section 25, the Sundheims argue that Colorado courts may recognize an implied damages action to effectuate a citizen's due process rights. We do not read these constitutional provisions so broadly.

Article II, section 6, requires the courts of this state to recognize when a citizen's rights are violated and effectuate those rights by applying legally established remedies. *Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo.1991); *Curtiss v. GSX Corp. of Colorado*, 774 P.2d 873, 876 (Colo.1989); *O'Quinn v. Walt Disney Prods., Inc.*, 177 Colo. 190, 195, 493 P.2d 344, 346 (1972). As these cases make clear, the equal justice provision provides citizens with access to state courts while guaranteeing the availability of necessary remedies. *Dove*, 808 P.2d at 1275. In no way does article II, section 6, obligate Colorado courts to create remedies where none currently exist.[9]

From these facts, it is clear that article II, section 6, and article II, section 25, do not provide a strong basis for recognition of an implied constitutional cause of action.

**C.**

The Sundheims next assert that *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), authorizes this court to recognize an implied damages action where a citizen has been deprived of state constitutional rights. To fully understand this issue, we must review *Bivens*, its progeny, and the relevant decisions of state courts that have been asked to recognize an implied cause of action.

---

9. Furthermore, this court has refused to enforce the equal justice provision when citizens fail to pursue their vested rights in a timely manner. *Dove*, 808 P.2d at 1275.

In *Bivens,* the United States Supreme Court held that a private citizen could sue a federal agent for damages stemming from violations of the citizen's Fourth Amendment rights. More importantly, the Court inferred this cause of action even though no federal statute authorized such a remedy. *Bivens,* 403 U.S. at 394–97, 91 S.Ct. at 2003–05. In support of its holding, the Supreme Court reasoned:

> Of course, the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation. But "it is ... well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."

*Id.* at 396, 91 S.Ct. at 2004 (*quoting Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)).[10] The *Bivens* Court also noted two instances where creation of an implied remedy would be unwarranted: (1) if "special factors counselling hesitation in the absence of affirmative action by Congress" were present; or (2) if there was an "explicit congressional declaration" prohibiting money damages and remitting the plaintiff to an equally effective substitute remedy. *Id.* at 396–97, 91 S.Ct. at 2005.

Subsequent Supreme Court case law has extended *Bivens* by authorizing implied damage actions for other constitutional violations. *See Davis,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (damages remedy was "surely appropriate" to remedy equal protection violation under the Fifth Amendment); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (presence of claim against government under Federal Tort Claims Act does not foreclose *Bivens* action against individual government defendants who may have violated plaintiffs' Eighth Amendment rights). It was not until *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), and *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), that the United States Supreme Court began to limit the *Bivens* holding.

In *Bush,* the plaintiff was fired from his position at the National Aeronautics and Space Administration (NASA) for making critical comments about NASA and his superiors. Even though the plaintiff was subsequently reinstated with back pay by the Civil Service Commission's Appeals Review Board, he filed a *Bivens* action alleging that his First Amendment rights had been violated. The *Bush* Court refused to infer a cause of action due to its reluctance to circumvent an elaborate remedial system that addressed complaints made by civil service employees.[11] *Bush,* 462 U.S. at 388, 103 S.Ct. at 2416. For this reason, the *Bush* Court chose to defer to Congress rather than create a new cause of action, holding:

> [W]e decline "to create a new substantive legal liability without legislative aid ..." because we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it.

*Id.* at 390, 103 S.Ct. at 2417 (citation omitted).

---

**10.** Clearly, the fact that there was no other remedy available to the plaintiff weighed heavily on the *Bivens* Court's decision. Justice Harlan stated in his concurrence that in this case, it was "damages or nothing." *Id.* at 410, 91 S.Ct. at 2012. The lack of a meaningful remedy was also emphasized in *Davis v. Passman,* 442 U.S. 228, 245, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979), where no effective remedy was available to the plaintiff because the congressman she accused of gender discrimination was no longer in office.

**11.** The *Bush* Court reasoned:
The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elabo-

rate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. The question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violations of employees' First Amendment rights.
*Bush,* 462 U.S. at 388, 103 S.Ct. at 2416.

*Chappell* involved a *Bivens* action brought by five enlisted men serving in the United States Navy who alleged that their superiors had violated their constitutional rights. The Supreme Court refused to recognize a *Bivens* action even though the sailors had no other remedy available to them. *Chappell,* 462 U.S. at 305, 103 S.Ct. at 2368. The *Chappell* Court determined that the military structure of discipline and the exercise of congressional authority over the military represented "special factors counselling hesitation" that justified denying the *Bivens* remedy. *Id.* at 303–04, 103 S.Ct. at 2367–68.

Finally, *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), concerned plaintiffs seeking damages for a gap in benefits caused by the termination and subsequent reinstatement of disability payments under Title II of the Social Security Act. After summarizing the *Bivens* line of cases, the *Schweiker* Court explained:

> In sum, the concept of "special factors counselling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Id.* at 423, 108 S.Ct. at 2467. Relying heavily upon *Bush,* the *Schweiker* Court refused to infer a damages action when it was apparent that Congress had carefully weighed competing public policies in defining the limits of recovery for social security claimants. *Id.* at 424–29, 108 S.Ct. at 2468–71.

The more recent Supreme Court cases interpreting *Bivens* suggest that implied damage actions are not appropriate for every violation of a citizen's constitutional rights. The emergence of "special factors counselling

hesitation" foreclosing the *Bivens* remedy has grown increasingly important and indicates a judicial willingness to defer the creation of new damage remedies to Congress. *See Schweiker,* 487 U.S. at 423, 108 S.Ct. at 2467; *Bush,* 462 U.S. at 390, 103 S.Ct. at 2417. This is especially true when there are other, more appropriate, remedies available or when Congress has chosen to limit or deny a remedy altogether. *See Schweiker,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370; *Chappell,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586; *Bush,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648.

State courts have been skeptical when asked to recognize implied damage actions in cases involving licensing and zoning determinations. *Shields v. Gerhart,* 163 Vt. 219, 658 A.2d 924 (1995); *Kelley Property Dev. v. Town of Lebanon,* 226 Conn. 314, 627 A.2d 909 (1993); *Rockhouse Mountain Property Owners Ass'n v. Conway,* 127 N.H. 593, 503 A.2d 1385 (1986).

*Kelley* involved the denial of a real estate developer's application for subdivision approval by town officials. Relying upon similar provisions of the Connecticut Constitution [12] to those cited by the Sundheims, the developer filed suit against the town officials for damages arising from the alleged denial of his due process rights.

After disposing of the developer's constitutional argument, the *Kelley* court refused to recognize an implied damages action under the facts before it. *Kelley,* 627 A.2d at 924. As a general matter, the court stated that it should not recognize a private damages action based on its state constitution if "the legislature has provided a reasonably adequate statutory remedy." *Id.,* 627 A.2d at 922. Relying upon a statute that provides for judicial review of a board determination in similar fashion to C.R.C.P. 106(a)(4), the court found that this remedy, coupled with other causes of action such as tortious inter-

---

**12.** Article first, § 10, of the Connecticut Constitution provides:

> All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and rights and justice administered without sale, denial or delay.

Article first, § 8, of the Connecticut Constitution provides:

> No person shall ... be deprived of life, liberty or property without due process of law....

ference or injunctive relief, weighed "heavily against judicial creation of a state *Bivens* action." *Id.* at 923.

The *Kelley* court also found that policy considerations weighed against recognizing an implied cause of action. The court pointed out that the existing remedies were particularly appropriate in light of the fact that the officials involved were laypersons with little or no technical expertise. *Id.* at 923. Exposing these officials, or the town itself, to liability in damages was likely "to have adverse consequences on the parties, local zoning processes, and the courts."[13] *Id.* at 923. The court concluded that existing remedies struck a proper balance between the needs of disappointed zoning applicants and the potential burdens on towns, zoning commissions, and the courts. *Id.* at 924.

## IV.

While it may be appropriate to recognize an implied state constitutional cause of action when there is no other adequate remedy, we agree with the approach taken by the court in *Kelley* that where other adequate remedies exist, no implied remedy is necessary. Under the facts of this case, C.R.C.P. 106(a)(4) represents the proper method for challenging a zoning determination. Additionally, without addressing the merits of their claim, we conclude that the Sundheims' § 1983 claim should be severed from the time-barred C.R.C.P. 106(a)(4) cause of action. The availability of these statutory remedies therefore makes judicial creation of an implied damages remedy unnecessary in this case.[14]

The court of appeals' decision remanding the Sundheims' § 1983 action is affirmed.

---

13. These consequences included: (1) a "chilling effect" on the zeal with which zoning commissions undertake their responsibilities; and (2) a substantial financial burden on local governments caused by encouraging disgruntled zoning applicants to bring damage actions whenever they are denied a permit or application. *Id.,* 627 A.2d at 923–24.

14. In addition to 42 U.S.C. § 1983, additional claims could have included regulatory takings, intentional interference with contractual relations, or intentional interference with a prospective business advantage. *See Sundheim,* 904 P.2d at 1348–49; *Kelley,* 627 A.2d at 923. As a consequence, the Sundheims were not lacking in potential damage remedies.