Jody BRAMMER–HOELTER, Laura Kilduff, Melissa Perry, Amy Sulzbach, Shelley Crews, and Bonnie Gould, Plaintiffs,

v.

TWIN PEAKS CHARTER ACADEMY, St. Vrain Valley School District RE–IJ, Brian Cox, and Dorothy Marlatt, Defendants.

No. Civ.A. 99–K–1481.

United States District Court, D. Colorado.

Jan. 25, 2000.

John R. Olsen, Olsen & Brown, LLC, Niwot, CO, for plaintiffs.

Patrick B. Mooney, Christopher Gdowski, Julie C. Tolleson, Semple, Miller & Mooney, P.C., Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiffs Jody Brammer–Hoelter, Laura Kilduff, Melissa Perry, Amy Sulzbach, Shelley Crews, and Bonnie Gould, former employees of Defendants Twin Peaks Charter Academy ("School") and St. Vrain Valley School District RE–IJ ("School District"), bring claims under 42 U.S.C. § 1983 against the School, the School District, Brian Cox (former chairman of the Board of Directors of the School) and Dorothy Marlatt (former administrator of the School) to remedy alleged infringement of their rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution as well as pendent state claims for infringement of their rights of due process, free speech and association under Article II, § 10 of the Colorado Constitution, breach of contract and estoppel, misrepresentation, defamation and intentional infliction of emotional distress.

Defendants move to dismiss Claims 3, 4, 7, 8, 9, 10 and 11 against the School and the School District, all claims against Brian Cox, and Claims 2 through 11 against Dorothy Marlatt. In addition, Defendants request an award of attorney fees in connection with the filing of the motion.

I. *Allegations in the Complaint.*

Plaintiffs are all former employees of Twin Peaks Charter Academy, an organized public school, where they were employed on renewable year-to-year contracts. They allege they received performance evaluations from Defendants during the 1997–1998 school year that rated them as good to excellent teachers. When Plaintiffs came up for their performance evaluations for the 1998–1999 school year, however, all, except for Plaintiff Brammer–Hoelter, were seriously and negatively criticized in certain categories despite no deterioration in their performance. These performance reviews were prepared by Defendant

Marlatt, a former administrator of Twin Peaks Charter Academy.

Plaintiffs maintain, between the time of their first performance evaluation during the school year 1997–1998, and the school year 1998–1999, they asserted their free speech, free association, and grievance rights. Over the course of months, on their own time, Plaintiffs spoke among themselves and with others regarding matters of public concern involving the operation of the School. Plaintiffs and other teachers articulated grievances concerning the operation of the School, including school-imposed and Marlatt-imposed limitations on free-speech, teaching techniques and performance, and suggestions on ways to improve the teaching and performance of the students. All teachers were forbidden to participate in discussions regarding these and other topics of public interest and concern.

At the invitation of the Board of Directors of the School ("Board"), in a series of meetings at the end of 1998, Plaintiffs and other teachers expressed their grievances and were promised that they would be properly processed and there would be no retaliation. Plaintiffs submitted grievances, in writing and orally, to the Board of which Mr. Cox was the chairman. The Board did not fully process their grievances pursuant to the due process procedures outlined in the "Employee Information Packet" distributed by Defendants to the teachers.

In voicing their grievances, Plaintiffs assert, they were exercising their rights of free speech and free association under the Constitution. As a result of this exercise, Defendants retaliated against them (with the exception of Brammer–Hoelter) by falsely and unfairly downgrading and criticizing them in their 1998–1999 performance evaluations. In particular, Plaintiffs assert their supervisor, Marlatt, treated them as *persona non grata* and intended to take further action against them, recommending that their contracts of employment not be renewed.

On March 1, 1999, Plaintiffs submitted their written resignations, giving notice of the termination of their employment to the Board of Directors. They assert, in order for the resignations to be effective, the Board was required to accept or take action upon the resignations, but did not do so. Shortly thereafter, Marlatt resigned. On March 5, 1999, Plaintiffs, while still employed and teaching at the School, allegedly rescinded their resignations in a letter to the Board. On March 14, 1999, however, Plaintiffs received letters from the School administrator advising they were forbidden to return to the School property, and, if they did so, they would be treated as trespassers. Plaintiffs maintain these letters constituted involuntary terminations of their employment, without just cause.

Thereafter Plaintiffs filed grievances relating to their terminations but were told by the Board that the processing of their grievances was conditioned upon their participating in exit interviews. Plaintiffs maintain their grievances and attempts to apply for re-employment were ignored.

According to Plaintiffs, after their termination, the School's administrators and other agents published allegedly defamatory statements regarding Plaintiffs in the Longmont Times–Call, suggesting they had caused "unfortunate problems" at the School and publicizing their termination with the implication that there was "just cause" as required by their contracts for termination. In addition, agents of the School sent allegedly defamatory letters to parents of the School's students, suggesting Plaintiffs had resigned (without mentioning the rescission of their resignations), had caused the need for replacements, and had damaged the quality of the School's education program. Plaintiffs maintain the letters, published statements, performance evaluations, and other communications by the School or its agents were part of a conspiracy among Defendants to damage Plaintiffs, causing a loss

of ability to be employed as teachers, loss of income, and damage to their personal and professional reputations.

## II. *Applicable Legal Standard*

"[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir.1989). In considering whether dismissal is proper under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999). Only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims which would entitle him to relief, should a Rule 12(b)(6) motion be granted. *Id.*

## III. *Merits*

A. *Third Claim for Relief for Breach of Plaintiffs' Liberty Interest/Reputational Due Process Rights under the Fifth and Fourteenth Amendments of the United States Constitution (against all Defendants).*

Defendants move to dismiss the third claim for relief stated against all Defendants for "breach of the plaintiffs' liberty interest/reputational due process rights pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution." (Compl.¶ 118.) They contend the Com-

plaint fails to meet the requirement that a plaintiff must allege information which is false and stigmatizing.

■■■ A public employee enjoys two protected liberty interests under the Fourteenth Amendment's due process clause: (1) An interest in his good name, reputation, honor and integrity, and (2) an interest in other employment opportunities. *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir.1989). Due process requires that an employee whose liberty interest is threatened be accorded notice and a hearing. *Hicks v. Watonga* 942 F.2d 737, 746 (10th Cir.1991). In order to show deprivation of a liberty interest under section 1983, Plaintiffs must show the government published false and stigmatizing information about them in connection with the adverse action taken against them. *Id.*[1] As a matter of law, Plaintiffs fail to state a claim in this regard.

Plaintiffs base their liberty interest/reputational due process claim on the following statements by Defendants. On March 6, 1999, Cox and the Board sent a letter to the parents and school staff stating that it was unfortunate that the plaintiffs had decided to resign. The letter also stated it was the "goal of the Board of Directors to ensure that the positive atmosphere of Twin Peaks Charter Academy is maintained", and the "Board of Directors will continue to work in the best interests of students, parents and staff. The Board of Directors continues to follow the estab-

---

1. This test differs from the *Pickering* balancing test applied to First Amendment claims. *See, e.g., Koch v. City of Hutchinson*, 847 F.2d 1436 (10th Cir.1988). In *Koch*, plaintiff was demoted from fire marshall in part because of a written report he prepared in the course of his official duties in which he stated his professional opinion as to the cause of a fire. Koch contended the report was protected speech under the First Amendment and could not therefore be the basis for his demotion. The Tenth Circuit applied the balancing test established by the Supreme Court in *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) for determining whether an employee is entitled to First Amendment protection for engaging in "speech" at work

or related to work. The court first determines whether the employee's speech is upon a matter of public concern and, if so, balances the employee's interest in free speech against the government's interest in the effective and efficient fulfillment of its responsibilities to the public. While the *Pickering* test applied in *Koch* is not directly relevant to this due process claim, as discussed below, it bears on the First Amendment claim. The Tenth Circuit made this distinction in *Flanagan*, applying the *Pickering* test to the First Amendment free speech claim, *id.* at 1561–67, and the test determining whether the government published false and stigmatizing information about the plaintiffs to the deprivation of liberty claim, *id.* at 1572.

lished school charter, polices [sic] and procedures." (Compl.¶ 85.) On March 10, 1999, Ms. Elaine Moretz, a consultant to the School, sent a letter to the parents and school staff announcing Plaintiffs' replacements, stating a "team of crisis counselors is on standby" and the school would be closed early on the following Friday "for departing teachers to pack" after which time everyone would "continue the quality education program in place at Twin Peaks." (Compl.¶ 81.)

Plaintiffs also base this claim on two published statements in the Longmont Times–Call. In the first article, School administrator, Mr. Ivan Adams stated, "there have been some very unfortunate problems" during the academic year. (Compl.¶ 73.) In the second article, School administrator, Peter Samaranayake stated his aim was to "bring back the school to some normalcy." (Compl.¶ 78.) Plaintiffs contend these statements referred directly or impliedly to them, or were likely to be read as such by the general public, and caused them reputational damage.

Lastly, Plaintiffs contend Defendants also publicized Plaintiffs' terminations from their employment, which, pursuant to their contracts, could only have been for "just cause." (Compl.¶ 76.) Thus, Plaintiffs argue, Defendants have implicitly made the public suggestion that there was "just cause" to terminate Plaintiffs. (*Id.*)

■ In order to satisfy the requirement that the statements at issue must impugn the good name, reputation, honor or integrity of the employee, a plaintiff must allege information which is false and stigmatizing. *Derstein v. State of Kansas*, 915 F.2d 1410, 1414 (10th Cir.1990). The statements on which Plaintiffs base their liberty interest claim fail to meet the standard of being false or stigmatizing.

The March 6 letter stated it was unfortunate Plaintiffs had decided to resign, the goal of the Board was to ensure that a positive atmosphere was maintained and the Board would continue to work in the best interests of students, parents and staff and to follow the charter, policies and procedures. The letter does not contain false statements about Plaintiffs, nor statements implicating their "dishonesty or immorality," as required in order to deprive an employee of a liberty interest in his good name and reputation. *See Melton v. City of Oklahoma City*, 928 F.2d 920, 927 (10th Cir.1991). Innuendo, if any, would at most implicate only insubordination or poor work habits, both of which have been found by the Tenth Circuit not to violate a liberty interest. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988) (charges of neglect of duties and insubordination not stigmatizing); *Sipes v. United States*, 744 F.2d 1418, 1422 (10th Cir.1984) (charge of lack of reliability and engaging in "horseplay" not stigmatizing).

The same applies to the statement that a team of crisis counselors was on standby and that school would close early for the departing teachers to pack, after which everyone would continue the quality education program. Similarly the reference to "some very unfortunate problems" and the desire to "bring back the school to some normalcy" is neither false nor stigmatizing. Nor can it be said, with regard to the alleged publications by Defendants of Plaintiffs' termination from employment, impliedly for "just cause," that such implication rises to the level of "dishonesty or immorality."

Plaintiffs also contend, the statement in the March 6 letter that "the Board of Directors continues to follow the established school charter, polices [sic], and procedures," implicated "the police" and, as such is sufficient to withstand this motion to dismiss. "Polices," however, is not the plural of "police" and can be considered nothing other than a misprint. The sentence, as Plaintiffs would read it, is totally nonsensical as is their attempt to cast it as either false or stigmatizing.

I find Plaintiffs have not stated a constitutional claim for deprivation of a liberty interest and thus do not reach the alterna-

tive grounds of qualified immunity raised by Defendants. I dismiss the third claim for relief against all Defendants.

B. *Fourth Claim for Relief for Breach of 42 U.S.C. § 1983 (against all Defendants).*

■ Defendants move to dismiss the fourth claim for breach of 42 U.S.C. § 1983, asserting § 1983 is not a separate cause of action. Plaintiffs acknowledge the fourth claim for relief cannot stand as a separate claim but wish to retain reference to § 1983 in ¶ 130 relating to the ninth claim for relief for legal fees. Because "Section 1983 itself does not create any substantive rights, but merely provides relief against those who, acting under the color of law, violate federal rights created elsewhere," *Reynolds v. School Dist. No. 1,* 69 F.3d 1523, 1536 (10th Cir. 1995), I dismiss the fourth claim against all Defendants.

C. *Seventh Claim for Relief for Misrepresentation (against all Defendants except Marlatt).*

Defendants move to dismiss Plaintiffs' seventh claim for misrepresentation, asserting the Complaint fails to meet the requirement that allegations of fraud or misrepresentation must be plead with specificity under Federal Rule of Civil Procedure 9(b). In their response, Plaintiffs "agree and stipulate that this claim may be dismissed as against all defendants." (Pls.' Response Mot. to Dismiss at 12.) Therefore, Plaintiffs' seventh claim for misrepresentation is dismissed against all Defendants.

D. *Eighth Claim for Relief for Intentional Infliction of Emotional Distress (against all Defendants except Marlatt).*

■ Defendants move to dismiss the eighth claim for intentional infliction of emotional distress. Plaintiffs concede, under Colorado law, public entities are immune from liability for outrageous conduct claims, *see* Colo.Rev.Stat. § 24–10–114(4) (1999); *City and County of Denver v. Desert Truck Sales,* 837 P.2d 759, 763 (Colo. 1992), and such a tort claim cannot be brought against the School and School District. Accordingly, Plaintiffs stipulate to the dismissal of this claim against those two entities. (Pls.' Response Mot. to Dismiss at 12.)

■ Defendants also assert this claim should be dismissed with regard to Cox, against whom it is also asserted,[2] because the alleged conduct does not meet the required threshold. To sustain this claim, the conduct complained of must "go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community," *Malandris v. Merrill Lynch, Pierce, Fenner & Smith,* 703 F.2d 1152, 1158 (10th Cir.1981), and be so atrocious as to cause an average member of society to exclaim, "Outrageous!" *Bigby v. Big 3 Supply Co.,* 937 P.2d 794, 800 (Colo.App.1997). Under Colorado law, discharge from employment, without more, is not outrageous conduct. *Grandchamp v. United Air Lines,* 854 F.2d 381, 384 (10th Cir.1988). Thus, "the manner of discharge, and the employer's conduct is critical to a finding of outrageous conduct." *Id.* at 385. While the jury determines the ultimate question of whether conduct is outrageous, the court must decide in the first instance whether reasonable persons could differ on the conduct being outrageous. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1350 (Colo.1988).

■ Plaintiffs respond with a three page narrative of alleged wrongdoing. None of the conduct is alleged to be personally attributable to Cox. Rather, Plaintiffs claim Cox is liable for the actions of

**2.** Defendants argue the eighth claim must also be dismissed against Marlatt. The Complaint states, however, that the claim is asserted against Defendants "[except for Defendant Marlatt.]" (Compl. at 20.) Although Plaintiffs indicated their intent to amend the Complaint to include Marlatt as a Defendant on the state court claims, they have not done so.

Marlatt in downgrading their performance evaluations, treating them as persona non grata, falsely criticizing their exercise of free speech and association, and developing the intent to recommend their contracts not be renewed. Plaintiffs also attempt to hold Cox liable as a board member who "was implicated in all the acts of his subordinates." (Pls.' Resp. Mot. to Dismiss at 22.)

Plaintiffs cite no authority for the theory that the intentional tort of outrageous conduct can rely on agency and agency relationship alone. Moreover, operations of the School were subject to management by the Board of Directors as a whole and Cox had no subordinates at the School. Personal liability cannot be imposed on an officer of a corporation merely because that individual is serving in such a capacity. *United States v. Van Diviner*, 822 F.2d 960, 963 (10th Cir.1987).

Plaintiffs have made no showing of particular conduct on the part of Cox, let alone that such conduct was so outrageous in character as to go beyond all possible bounds of decency. Accordingly, the outrageous conduct claim is dismissed against Cox as well as against the School and School District.[3]

E. *Ninth Claim for Relief for Legal Fees Pursuant to 42 U.S.C. § 1988 (against all Defendants).*

■ Defendants move to dismiss the ninth claim for relief for the payment of legal fees pursuant to 42 U.S.C. § 1988 on the grounds that this is a remedies statute, rather than a separate cause of action. *See Schroder v. Volcker*, 864 F.2d 97, 99 (10th Cir.1988). In their response, Plain-

tiffs stipulate to the dismissal of this claim as a separate cause of action. The prayer for legal fees is more appropriately included in the *ad damnum* clause. (Compl. at 22.) Accordingly, the ninth cause of action is dismissed against all Defendants.

F. *Tenth Claim for Relief for Breach of the Plaintiffs' Rights of Free Speech and Association Pursuant to Article II § 10 of the Colorado Constitution (against all Defendants except Marlatt).*

Defendants seek to dismiss the tenth claim for breach of Plaintiffs' rights of free speech and association pursuant to Article II, § 10 of the Colorado Constitution.[4] They contend the Colorado Constitution does not give rise to a private cause of action for damages. *See Board of County Commissioners v. Sundheim*, 926 P.2d 545, 549–50 (Colo.1996). Citing *Bock v. Westminster Mall*, 819 P.2d 55 (Colo.1991), Plaintiffs respond there has always been an implied cause of action for declaratory or injunctive relief under the state constitution and this is the relief they seek under this cause of action. They also argue *Sundheim*, 926 P.2d at 553, left the door open with regard to whether money damages can be sought under state constitutional provisions, stating there may be special circumstances in which to recognize the existence of an implied right of action under the Colorado Constitution. Alternatively, Plaintiffs move to certify to the Colorado Supreme Court the question of whether an implied right of action for damages exists to enforce Art. II, § 10.

■ There is no implied cause of action arising directly from the Colorado Consti-

---

**3.** I do not reach Defendants' additional argument that the claim is barred against Cox under the Colorado Governmental Immunity Act (CGIA), Colo.Rev.Stat. § 24–10–105 (1999), which bars tort claims against public employees unless and until a plaintiff pleads specific facts showing the conduct of the defendant under consideration was "willful and wanton."

**4.** "No law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and fact." Colo. Const. Art. II, Section 10.

tution. *Vanderhurst v. Colorado Mountain College Dist.,* 16 F.Supp.2d 1297, 1304 (D.Colo.1998). No statutory equivalent to 42 U.S.C. § 1983 exists under Colorado state law to enforce the state constitution. *Id.* Moreover, Colorado appellate courts have not recognized an implied cause of action to enforce the provisions of the Colorado Constitution. *In Sundheim,* the Colorado Supreme Court addressed whether it has "the authority to recognize an implied damages action in cases where citizens allege that government entities have violated their state constitutional rights." *Id.* at 547. The court concluded no such implied cause of action to enforce the Colorado Constitution should be recognized because "[w]hile it may be appropriate to recognize an implied state constitutional cause of action when there is no other adequate remedy ... where other adequate remedies exist, no implied remedy is necessary." *Sundheim* 926 P.2d at 553.

Here, adequate remedies are available pursuant to § 1983 for violations of the United States Constitution and for breach of contract, including damages. Under these circumstances, I decline to recognize an implied state constitutional cause of action for damages. *Sundheim,* 926 P.2d at 553. Nor is there occasion to certify this question to the Colorado Supreme Court.

Moreover, Plaintiffs' reliance on *Bock* for the assertion that there is an implied cause of action for declaratory relief under the state constitution is misplaced. There, the Colorado Supreme Court addressed the issue of whether Article II, Section 10 of the Colorado Constitution prevents the private owner of an enclosed shopping mall from excluding citizens engaged in nonviolent political speech from the common areas of the mall. *Bock,* 819 P.2d at 55–56. Plaintiffs, the shopping mall solicitors, sought declaratory and injunctive relief on the ground that they had a protected right to disseminate information and to solicit signatures from the public as denied by defendants. The court reversed the judgment of the court of appeals affirming the district court's denial of petitioners' request to speak freely and solicit signatures in the mall.

Plaintiffs here, unlike in *Bock,* do not seek prospective relief against a public speech policy nor do they demand reinstatement to their former positions. They claim the relief sought under the state constitution is in the form of a purging of the negative entries, evaluations and other documents contained in their personnel files. Clearly, the relief sought is remedial rather than prophylactic. In *Bock,* Plaintiffs sought prevention of future violations of their free speech rights. Here, Plaintiffs seek relief for alleged past violation of their free speech rights which resulted in entries in their records which they wish to have expunged. They cite no authority for the proposition that a claim for relief in the form of expungement of records is available under Article II, Section 10 of the Colorado Constitution. *See Saum v. Widnall,* 912 F.Supp. 1384, 1387 (D.Colo. 1996) (holding declaratory relief is inappropriate where the constitutional injury has already occurred and there is no threat of future harm). For these reasons, I find the Complaint fails to state a claim under the Colorado Constitution and dismiss it against the School, School District and Cox.

G. *Eleventh Claim for Relief for Defamation (against all Defendants except Marlatt).*

Defendants move to dismiss the eleventh claim for relief for defamation against the School and School District under Colo.Rev.Stat. § 24–10–106 (1999) which grants a public entity immunity from liability "in all claims for injury which lie in tort or could lie it tort...." Plaintiffs stipulate to the dismissal of this claim against the School and the District.

Defendants also move to dismiss this claim against Cox, asserting as a mat-

ter of law, none of the alleged statements was defamatory. Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damage. *Keohane v. Stewart,* 882 P.2d 1293, 1297 (Colo.1994). The statements that Plaintiffs allege give rise to their defamation claim are the same as those described above on which they base their liberty interest/reputational due process claim.

 The tort of defamation consists of two types of communication, libel and slander. Libel is usually a written communication, as are those alleged to be defamatory here, while slander is generally an oral communication. For language to be libelous per se, the facts or reports must be deplorable, derogatory, or disgraceful, and the element of disgraceful imputation must be clearly expressed on the face of the writing. *Bernstein v. Dun & Bradstreet,* 149 Colo. 150, 368 P.2d 780, 784 (1962). To be libelous per se, the publication must contain defamatory words specifically directed at the person claiming injury, which words must, on their face, and without the aid of intrinsic proof be unmistakably recognized as injurious. *Inter-State Detective Bureau v. The Denver Post,* 29 Colo.App. 313, 484 P.2d 131, 133 (1971). Words which require an innuendo are not libelous per se. A statement is libel per quod if it requires innuendo or extrinsic evidence to establish its defamatory nature. *Keohane,* 882 P.2d at 1296. Here, the alleged defamatory language is neither scurrilous nor inflammatory. Plaintiffs assert the impact of the statements on them was produced by way of innuendo and such language was libel per quod.

 Plaintiffs rely on three paragraphs of the Complaint as being factually sufficient to withstand dismissal of this claim against Cox. First, they assert "the letters, newspaper-published statements, performance evaluations and other false and defamatory communications that the defendants made to the students' parents, school staff and to the public were part of an overt, coordinated campaign and conspiracy among the defendants." (Compl.¶ 94). Second, they contend Cox should be liable for Marlatt's actions because her actions were at Cox's direction or done with his approval (Compl.¶ 96.) Third, they claim Cox is culpable for the negligent supervision of Marlatt "in thus allowing, participating in, authorizing, directing and/or approving her actions as described herein ... such conduct amounts to express or tacit authorization of said conduct." (Compl.¶ 97.)

Even if Plaintiffs were to succeed in showing the statements were defamatory, they cite no authority in support of finding Cox liable on the basis of the statements made by others. *See Berry v. Stevinson Chevrolet,* 804 F.Supp. 121, 133–4 (D.Colo. 1992) (holding mere status as a director does not create liability where the actions complained of were taken by individual managerial employees of a corporate entity). The only communication Defendant Cox was allegedly personally responsible for was the March 6, 1999 letter stating it was unfortunate that plaintiffs had decided to resign, it was a goal of the Board of Directors to ensure that the positive atmosphere of Academy was maintained, and the Board would continue to follow the "established school charter, polices [sic], and procedures." (Compl.¶ 85.) These statements cannot be spun into nefarious innuendo, holding Plaintiffs to contempt or ridicule and thereby causing them to incur injury or damage. Accordingly, this claim is dismissed, not only against the School and School District, but also against Cox.

H. *Second Claim for Relief for the Breach of Procedural Due Process Rights (against all Defendants).*

Defendants move to dismiss the second claim against Marlatt and Cox for breach of procedural due process rights pursuant to the Fifth and Fourteenth amendments to the United States Constitution. They

do not challenge this claim against the School and School District.

■ The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law. . . ." § U.S. Const. amend. XIV, 1. Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision. *Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir.1991).

Plaintiffs allege Marlatt seriously and negatively criticized them in their 1998–1999 performance evaluations, the Board failed fully to process Plaintiffs' grievances, the Board failed to accept Plaintiffs' resignation rescissions, the Board informed Plaintiffs their grievances would not be processed unless they participated in exit interviews, Marlatt treated Plaintiffs as outcasts, criticized their exercise of free speech and association and developed the intent that their contracts not be renewed. Cox is apparently named as a Defendant as being responsible for Marlatt's actions and those of the Board.

■ Defendants argue Marlatt and Cox are entitled to qualified immunity on this procedural due process claim because the conduct complained of does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. To overcome qualified immunity, a plaintiff must demonstrate that the right in question was clearly established at the time of defendant's conduct. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988). A plaintiff cannot satisfy this burden merely by identifying an established right, such as the right to procedural due process, and alleging the defen-

dant violated it. Rather, the contours of the right must be so clear that a reasonable official would have understood that what he or she was doing violated that right. *Anderson v. Creighton*, 483 U.S., 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ To overcome qualified immunity, a plaintiff must show "*the particular actions taken by the defendants* were impermissible under the law established at that time." *P.C. v. McLaughlin*, 913 F.2d 1033, 1040 (2nd Cir.1990) (emphasis added). In responding to the qualified immunity argument, Plaintiffs rely on and attach *Schuler v. City of Boulder*, 189 F.3d 1304 (10th Cir.1999). That case addresses the issue of the contours of First Amendment rights. Plaintiffs fail to demonstrate the alleged criticism and failure of the Board to recognize the rescission of a voluntary resignation and to process their grievances constituted conduct on the part of Marlatt and Cox which violated Plaintiffs' clearly established constitutional rights to due process. Accordingly, the second claim for violation of procedural due process against Cox and Marlatt is dismissed.

I. *Remaining Claims against Defendant Cox: First Claim (under § 1983 for violation of Plaintiffs' First Amendment Rights); Fifth Claim (for Breach of Contract), and Sixth Claim (for Estoppel).*

Defendants move to dismiss the remaining claims against Cox. They assert there is no allegation that any action taken by Cox personally violated Plaintiffs' rights and no facts set forth support any cause of action against him in his alleged capacity as agent, co-conspirator and negligent supervisor. Defendants further argue the first claim under § 1983 against Cox is barred by qualified immunity.

■ Plaintiffs stipulate in their response that the fifth and sixth claims for relief do not apply to Cox and Marlatt. They do not specifically address the argu-

ments raised by Defendants with respect to the first claim against Cox for violation of their First Amendment rights. The Complaint states Cox, as Chairman of the Board, forbade Plaintiffs to participate in discussions involving their free speech and neglected to process their grievances. (Compl. at 6–10.) For some years it has been settled that a State cannot condition public employment on a basis that infringes the employee's protected interest in freedom of expression. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Pickering*, the Supreme Court set forth the test for determining whether an employee is entitled to First Amendment protection for engaging in "speech" at work or related to work. The court first determines whether the employee's speech is upon a matter of public concern and, if so, balances the employee's interest in free speech against the government's interest in the effective and efficient fulfillment of its responsibilities to the public.

Defendants do not challenge the First Amendment claim as to the School, School District or Marlatt, but only as to Cox. Moreover, in seeking dismissal of the claim against Cox, Defendants have not raised the *Pickering* balancing test. Instead, they assert the claim should be dismissed against Cox because it does not set forth facts supporting a cause of action against him as agent, co-conspirator or negligent advisor and because the claim against him is barred by qualified immunity. I address dismissal of the First Amendment claim against Cox on this basis.

 Rather than set forth facts supporting a cause of action against Cox himself, Plaintiffs attribute to him the alleged actions of the Board in forbidding them to participate in discussions involving their free speech and in neglecting to process their grievances. Plaintiffs cite no authority for the proposition that Cox should be held liable for the alleged violation of their First Amendment rights by the Board as a whole. If Plaintiffs rely on Cox's supervisory authority as chairman of the Board, they must establish a deliberate, intentional act on his part which violated their constitutional rights. *See Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir.1992). They have not established that any particular action of Cox was impermissible under established law. *See P.C. v. McLaughlin*, 913 F.2d at 1040. Accordingly, I dismiss the First Amendment claim against Cox as well as the fifth and sixth claims against Cox and Marlatt. Cox.

### J. *Punitive Damages.*

 The Complaint includes a prayer for punitive damages. Defendants argue and Plaintiffs concede that exemplary damages are not available against the School and School District under Colo.Rev. Stat. 24–10–114(4) or under 42 U.S.C. § 1983. Therefore the prayer for the punitive damages is stricken as against the School and School District.

### K. *Defendants' Request for An Award of Fees and Costs Incurred in Connection with this Motion.*

The Complaint asserts eleven claims for relief. In their motion to dismiss, Defendants seek to dismiss claims three, four, seven, eight, nine, ten and eleven in their entirety, to dismiss all claims against Cox, and to dismiss claims three through eleven against Marlatt. In response, Plaintiffs have confessed the fourth claim (breach of § 1983 as a separate cause of action) as to all Defendants; the seventh claim (misrepresentation) as to all Defendants; the ninth claim for legal fees pursuant to 42 U.S.C. § 1988 (the payment of legal fees as a separate cause of action) against all Defendants; and the fifth (breach of contract) and sixth (estoppel) claims against Cox. Plaintiffs correctly point out the state claims (fifth, sixth, seventh, eighth, tenth and eleventh) have not been asserted against Marlatt.

This order dismisses the first claim (violation of the First Amendment claim) against Cox (not challenged in the motion to dismiss as against the School, School District and Marlatt); second claim (breach of procedural due process) against Marlatt and Cox (not challenged in the motion to dismiss as against the School and School District); third claim for relief (breach of Plaintiffs' liberty interest) against all Defendants; eighth claim (intentional infliction of emotional distress) against all Defendants (except Marlatt against whom the claim has not been asserted); the tenth claim (breach of Plaintiffs' Rights of Free Speech under the Colorado Constitution) against all Defendants (except Marlatt against whom the claim has not been asserted); and the eleventh claim (for defamation) against all Defendants (except Marlatt against whom the claim has not been asserted). I dismiss the complaint against Cox. I also strike the prayer for the punitive damages against the School and School District.

Thus, the remaining claims are the first (First Amendment) against the School, School District and Marlatt; second (breach of procedural due process), fifth (breach of contract) and sixth (estoppel) against the School and School District. Defendants assert they are entitled to attorney fees pursuant to Colo.Rev.Stat. § 13–17–201 (1999) (providing for the award of attorney fees when tort claims are dismissed pursuant to Rule 12(b)); Colo.Rev.Stat. § 24–10–110(5)(c) (1999) (providing for the award of attorney fees to public employees (Cox and Marlatt) where a plaintiff does not "substantially prevail" on claims for exemplary damages against that employee); and Colo.Rev.Stat. § 13–17–102(2) (1999) (providing for an award of attorney fees where the court finds an action was brought that "in whole or in part ... lacked substantial justification").

Plaintiffs request me to deny the request for attorney fees under Colo.Rev. Stat. § 13–17–201 (1999) because they have sought voluntary dismissal of certain claims and because I do not dismiss the entire action. They also assert the claim for fees under Colo.Rev.Stat. § 13–17–102 should be denied because where there is an overlap between that section and § 13–17–201, the latter controls and in a case involving application of 42 U.S.C. § 1983, the legal fee provision of that statutory framework is preemptive of state statutes. Finally, Plaintiffs argue their claims were not substantially frivolous because they reflected clearly established harm to Plaintiffs and that Plaintiffs should not be required to anticipate any and all affirmative defenses.

I have dismissed the action against Cox under Fed.R.Civ.P. 12(b)(1). Under Colo. Rev.Stat. 13–17–201, where any tort action is dismissed on motion of the defendant before trial under Rule 12(b) of the Colorado Rules of Civil Procedure, "such defendant shall have judgment for his reasonable attorney fees in defending the action." The statute has been held equally applicable to a dismissal under Fed.R.Civ.P. 12(b) of a tort claim brought pursuant to Colorado law. *See Zerr v. Johnson,* 905 F.Supp. 872, 875 (D.Colo.1995), *aff'd* 120 F.3d 272, 1997 WL 423115 (10th Cir. July 29, 1997).

By implication, § 13–17–201 allows a plaintiff to escape liability for attorney fees by filing a confession to a motion to dismiss under Rule 12(b) in such a manner that defendant is not required to expend additional efforts beyond the filing of its motion. *Houdek v. Mobil Oil Corp.,* 879 P.2d 417, 425 (Colo.App.1994); *Employers Insurance of Wausau v. RREEF USA Fund–II (Colorado), Inc.,* 805 P.2d 1186, 1188 (Colo.Ct.App.1991). Here, Plaintiffs confessed the state claims against Cox for misrepresentation, breach of contract, and estoppel against Cox. They did not confess the remainder of causes of action against him, including the state claims for intentional infliction of emotional distress and defamation. Because Cox was required to expend efforts beyond the filing of the motion to dismiss,

an award of fees under § 13–17–201 is warranted. Moreover, Plaintiffs are liable for Cox's attorney fees, notwithstanding that certain claims may remain against other Defendants. *See Smith v. Town of Snowmass Village*, 919 P.2d 868, 873 (Colo.App.1996) (holding the dismissed defendant was not precluded from obtaining its reasonable attorney fees under 13–17–201 even though the action was still pending against another defendant).

I conclude, pursuant to Colo.Rev.Stat. § 13–17–201, Cox is entitled to an award of his reasonable attorney fees and costs associated with defending this action. I decline to award attorney fees under any of the other statutory sections cited by Defendants.

### IV. *Conclusion.*

For the aforesaid reasons, I order that Defendants' Motion to Dismiss is:

GRANTED as to the first claim (First Amendment) as to Cox (remains against, School, School District and Marlatt);

GRANTED as to the second claim (breach of procedural due process) as to Marlatt and Cox (remains against School and School District);

GRANTED as to the third claim (breach of Plaintiffs' liberty interest) against all Defendants;

GRANTED as to the fourth claim (breach of § 1983 as a separate cause of action) against all Defendants;

GRANTED as to fifth (breach of contract) and sixth (estoppel) claims against Cox (not filed against Marlatt) (remains against School and School District);

GRANTED as to the seventh claim (misrepresentation) against Cox, School and School District (not filed against Marlatt);

GRANTED as to the eighth claim (intentional infliction of emotional distress) against all Cox, School and School District (not filed against Marlatt);

GRANTED as to the ninth claim (legal fees pursuant to 42 U.S.C. § 1988 as a separate cause of action) against all Defendants;

GRANTED as to the tenth claim (Article II § 10 of the Colorado Constitution) against Cox, School and School District (not filed against Marlatt);

GRANTED as to the eleventh claim (defamation) against Cox, School and School District (not filed against Marlatt).

GRANTED insofar as it seeks to strike the prayer for the punitive damages against the School and School District;

GRANTED insofar as it seeks dismissal of Defendant Cox from this suit;

GRANTED insofar as it seeks an award of reasonable attorney fees to Cox.[5]

---

5. If the parties are unable to agree on the reasonable amount of an award of attorney fees, Cox may file a motion to determine same, Plaintiffs will have ten days from the date of filing to respond, and the matter will be set for evidentiary hearing with costs and attorney fees for that matter to be awarded as the court deems appropriate following the event.