20CA0531 Bruce v Pikes Peak 10-21-2021 COLORADO COURT OF APPEALS Court of Appeals No. 20CA0531 El Paso County District Court No. 19CV362 Honorable Frances R. Johnson, Judge Douglas Bruce, Plaintiff-Appellant, v. Pikes Peak Regional Building Department, City of Colorado Springs, Colorado, and El Paso County Public Trustee, Defendants-Appellees. JUDGMENT AFFIRMED Division VI Opinion by JUDGE FOX Welling and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 21, 2021 Douglas Bruce, Pro Se Sparks Wilson, P.C., Eric V. Hall, Colorado Springs, Colorado, for Defendant-
Appellee Pikes Peak Regional Building Department Wynetta P. Massey, City Attorney, W. Erik Lamphere, Assistant City Attorney, Colorado Springs, Colorado, for Defendant-Appellee City of Colorado Springs Diana K. May, County Attorney, Steven Klaffky, Senior Assistant County Attorney, Colorado Springs, Colorado, for Defendant-Appellee El Paso County Trustee 
1 ¶ 1 Plaintiff, Douglas Bruce, appeals the district court’s dismissal of his complaint against defendants Pikes Peak Regional Building Department (Department), City of Colorado Springs (City), and El Paso County Public Trustee (Trustee). We affirm. I. Background ¶ 2 We glean the following facts from the allegations in Bruce’s complaint and the district court’s construal of those allegations. A. Factual Basis of Claims Against the Trustee ¶ 3 Bruce owned a residential building located at 1326 W. Kiowa Street in Colorado Springs (the Building) — the subject of this action. In 2016, he sold the Building to Renovation Management Group 106, LLC (Renovation), of which Joseph Graeve soon became the sole member. The sale of the Building was secured by a deed of trust in Bruce’s favor. ¶ 4 In early 2018, Renovation defaulted on payments it owed to Bruce for the sale of the Building. Bruce then initiated proceedings to foreclose on the deed of trust, and the Trustee scheduled a foreclosure sale for November 7, 2018. ¶ 5 On November 6, 2018, Graeve filed for bankruptcy and listed the Building as one of his assets, which, pursuant to federal law, 
2 automatically stayed any foreclosure action against the Building. However, Graeve did not notify Bruce or the Trustee that he had filed for bankruptcy, and the foreclosure sale took place as scheduled the next day. Bruce was declared the successful bidder at the sale. ¶ 6 The Trustee became aware of Graeve’s bankruptcy filing and withheld recording a deed of sale because the sale violated the automatic stay. Bruce met with the bankruptcy trustee and attempted to file a motion for relief from the stay with the bankruptcy court; however, Bruce apparently did not pay the required filing fee and the court rejected Bruce’s motion. Bruce instead opted to wait until the bankruptcy case closed to attempt to recover the Building, which he believed would be in March 2019. ¶ 7 Around September 20, 2019, Bruce claims that the bankruptcy court issued an order allowing secured creditor foreclosures against Graeve’s property to proceed. Bruce then requested that the Trustee record the foreclosure deed of sale withheld pending the bankruptcy proceedings. The Trustee, however, refused to so; such time had elapsed that he believed he was statutorily obligated to withdraw the 2018 sale. 
3 B. Factual Basis of Claims Against the City and the Department ¶ 8 Meanwhile, the structural integrity of the Building had substantially deteriorated, largely because Renovation had removed the roof, siding, and porch from the Building in 2017. ¶ 9 In early 2018, Bruce notified the City that the Building, which was apparently vacant, had become an “attractive nuisance” and asked the City to fence it off. In January 2019, the Department, acting pursuant to section 112 of the Pikes Peak Regional Building Code (RBC), issued a notice and order declaring the Building to be a “dangerous building,” requiring that it be vacated, and ordering that the Building be repaired, rehabilitated, or demolished. The Department served the notice and order on Renovation with a copy to Bruce as a lienholder of the Building. ¶ 10 Bruce appealed the “dangerous building” designation, and an administrative hearing was held on the matter before the Department’s board of appeals on March 20, 2019, and April 4, 2019. The board of appeals affirmed the designation and the accompanying notice and order on April 17, 2019. The written decision stated that it was “a final agency decision for all purposes under Colorado law.” 
4 ¶ 11 To prevent the demolition of the Building, Bruce sought a permit from the Department allowing him to repair the Building by installing a roof, siding, and porch. He did not, however, pursue a certificate of habitability of the Building; he merely wanted it restored to its 2016 condition, have it remain vacant, and then eventually sell it to a buyer who would finish renovations. The Department denied his request on May 16, 2019, finding that Bruce did not submit sufficient plans to repair the Building and that his request was untimely. Bruce appealed to the Department’s board of review, which, after an administrative hearing, affirmed the permit denial on August 21, 2019. That written decision also stated that it was “a final agency decision for all purposes under Colorado law.” C. District Court Proceedings ¶ 12 On October 22, 2019, Bruce filed a complaint in district court outlining a litany of cursory claims. Against the Department and the City, he alleged claims of tortious conduct, asserted several violations of his constitutional rights, and sought injunctive relief from the Department’s rulings. As to the Trustee, he raised a number of claims seeking to compel the Trustee to record the deed 
5 of sale that was issued contrary to the bankruptcy court’s automatic stay in November 2018. ¶ 13 The three defendants independently filed motions to dismiss, arguing that Bruce’s claims should be dismissed for lack of jurisdiction under C.R.C.P. 12(b)(1) and for failure to state a claim under C.R.C.P. 12(b)(5). In three separate orders, the district court granted each defendant’s motion to dismiss. Together, the court’s orders dismissed with prejudice all of the claims Bruce raised in his complaint. II. Request for Oral Argument ¶ 14 Bruce requests oral argument, but he does so only in his opening brief. Because “[a] request for oral argument must be made in a separate document entitled ‘request for oral argument,’” his request is denied and his appeal stands submitted on the briefs. C.A.R. 34(a) (emphasis added). III. Compliance with C.A.R. 28 ¶ 15 We first note that Bruce’s opening brief is substantively deficient and fails to comply with C.A.R. 28. Though Bruce appeals the district court’s three dismissal orders, he does not make any specific, developed argument as to why the court erred by 
6 dismissing any of his claims. Instead, his brief reads as a long list of grievances and bald legal assertions and largely reiterates — in conclusory fashion — the claims he made in his complaint. In fact, his entire “argument” section is all of five sentences, and it does not include any mention of the trial court’s orders, explanation as to why the trial court erred, or citation to legal authority. See C.A.R. 28(a)(7)(B) (Arguments “must contain . . . appellant’s contentions and reasoning, with citations to the authorities and parts of the record on which the appellant relies.”). And, among other failures to comply with C.A.R. 28, his brief does not include any recitation of the standard of review, statement of preservation, or proper citation to the record. See C.A.R. 28(a)(7)(A) (Arguments “must contain . . . statements of the applicable standard of review with citation to authority, whether the issue was preserved, and if preserved, the precise location in the record where the issue was raised and where the court ruled.”). ¶ 16 Despite the deficiencies in Bruce’s brief, however, we opt to address the merits of his appeal as best we can, which we construe as a general challenge to the district court’s three dismissal orders. But we reiterate the admonishment from a previous division of this 
7 court: Bruce is “cautioned that, in the future, his failure to comply with C.A.R. 28 or other applicable appellate rules may result in striking the noncomplying brief or other appropriate sanctions, including dismissal.” Bruce v. City of Colorado Springs, 252 P.3d 30, 32 (Colo. App. 2010). IV. Standard of Review and Applicable Law ¶ 17 The Department, City, and Trustee moved to dismiss Bruce’s claims under C.R.C.P. 12(b)(1) and 12(b)(5). ¶ 18 A C.R.C.P. 12(b)(1) motion to dismiss challenges a court’s subject matter jurisdiction. Where the facts underlying a jurisdictional issue are undisputed, we review the district court’s dismissal of a claim under C.R.C.P. 12(b)(1) de novo. Tulips Invs., LLC v. State ex rel. Suthers, 2015 CO 1, ¶ 11. ¶ 19 A C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim “serves as a test of the formal sufficiency of a plaintiff’s complaint.” Norton v. Rocky Mountain Planned Parenthood, Inc., 2016 COA 3, ¶ 12, aff’d, 2018 CO 3. Dismissal under C.R.C.P. 12(b)(5) is proper “where the factual allegations in the complaint cannot, as a matter of law, support the claim for relief.” Bewley v. Semler, 2018 CO 79, ¶ 14 (quoting Colo. Ethics Watch v. Senate 
8 Majority Fund, LLC, 2012 CO 12, ¶ 16). To survive a C.R.C.P. 12(b)(5) motion, a complaint must include factual allegations sufficient to raise a right to relief “above the speculative level.” Warne v. Hall, 2016 CO 50, ¶ 9 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). “[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.” Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). ¶ 20 “We review a C.R.C.P. 12(b)(5) motion to dismiss de novo and apply the same standards as the trial court.” Norton, 2018 CO 3, ¶ 7. “[W]e accept all factual allegations in the complaint as true, viewing them in a light most favorable to the plaintiff.” Bewley, ¶ 14. We are not, however, bound to accept the truth of bare legal conclusions presented as fact. Warne, ¶ 9. V. Dismissal was Proper ¶ 21 Like the district court, we understand Bruce’s complaint as raising the following claims: (1) a request for an injunction; (2) a challenge to the Department’s rulings; (3) various tort claims; (4) a substantive due process claim; (5) an impairment of contract claim; and (6) several claims seeking to compel the Trustee to record a 
9 deed of sale. We address the district court’s dismissal of each claim in turn, and for the reasons below, we discern no error.1 A. Request for Injunction and Challenges to the Department’s Rulings ¶ 22 Bruce’s complaint appeared to challenge two specific Department rulings: (1) its determination that the Building qualified as a “dangerous building” under the RBC and (2) its denial of his request for a building permit to restore the roof, siding, and porch of the Building. Because the district court found that the Department’s rulings were quasi-judicial in nature, it construed Bruce’s challenges as claims made pursuant to C.R.C.P. 106(a)(4). See C.R.C.P. 106(a)(4) (permitting review of “any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions”); see also Bd. of Cnty. Comm’rs v. Sundheim, 926 P.2d 545, 548 (Colo. 1996) (“C.R.C.P. 106(a)(4) provides the exclusive remedy for reviewing a quasi-judicial decision 1 Bruce does not argue that the district court improperly characterized his claims in its dismissal orders. Thus, we assume the district court properly construed Bruce’s complaint. 
10 made by a government entity.”). We agree that the court properly characterized his challenges as C.R.C.P. 106(a)(4) claims.2 ¶ 23 As the district court noted, a complaint seeking review under C.R.C.P. 106(a)(4) must be filed in the district court “not later than [twenty-eight] days after the final decision of the body or officer.” C.R.C.P. 106(b). Because the twenty-eight-day filing requirement is jurisdictional, Citizens for Responsible Growth v. RCI Dev. Partners, Inc., 252 P.3d 1104, 1106 (Colo. 2011), “a [C.R.C.P.] 106(a)(4) complaint that is not filed in the district court by the [twenty-eight]-
day jurisdictional deadline must be dismissed for lack of subject matter jurisdiction,” Maslak v. Town of Vail, 2015 COA 2, ¶ 17. Bruce did not file his complaint until October 22, 2019 — 187 days after the Department’s final decision to designate the Building a “dangerous building” on April 17, 2019, and 62 days after its final 2 Bruce characterizes his claims as constitutionally based. But even constitutional claims, excluding a claim brought under 42 U.S.C. section 1983 seeking monetary damages, must be brought in a complaint seeking Rule 106(a)(4) review. See Bd. of Cnty. Comm’rs v. Sundheim, 926 P.2d 545, 548-49 (Colo. 1986) (excluding time bar in C.R.C.P. 106(b), as any interest in government efficiency and finality “must give way to the compelling federal interest of giving § 1983 actions a broad berth”). To the extent Bruce’s complaint raised a claim under 42 U.S.C. section 1983, the district court correctly dismissed any such claim under C.R.C.P. 12(b)(5). 
11 decision denying Bruce’s permit request on August 21, 2019. Thus, the court properly dismissed Bruce’s challenges to those rulings for lack of jurisdiction under C.R.C.P. 12(b)(1). See Maslak, ¶ 17. ¶ 24 Relatedly, Bruce also sought to enjoin the Department and the City from taking any action to demolish the Building or prevent him from restoring it. So, in addition to directly challenging the Department’s rulings, Bruce sought injunctive relief from the effects of those rulings. However, while a party can seek injunctive relief in connection with a C.R.C.P. 106(a)(4) action, the effects of the quasi-judicial decision cannot be enjoined separate and apart from the C.R.C.P. 106(a)(4) action. See Sundheim, 926 P.2d at 548 (Because “C.R.C.P. 106(a)(4) provides the exclusive remedy for reviewing a quasi-judicial decision made by a government entity . . . a C.R.C.P. 106(a)(4) complaint must include all causes of action . . . in a single C.R.C.P. 106(a)(4) action.”). Thus, Bruce’s request for injunctive relief could not be made apart from his C.R.C.P. 106(a)(4) claims, which were properly dismissed as untimely. Indeed, substantively, Bruce’s request sought nothing more than the two time-barred claims: judicial review of the Department’s rulings. Framing his request as one for injunctive relief could not allow him 
12 to circumvent the twenty-eight-day filing deadline for such claims. See Danielson v. Zoning Bd. of Adjustment, 807 P.2d 541, 544 (Colo. 1990) (A plaintiff “cannot escape the time limitation of C.R.C.P. 106(b) by labelling his request for judicial review as a prayer for declaratory judgment.”). Accordingly, the district court properly dismissed Bruce’s request for injunctive relief. B. Tort Claims ¶ 25 Bruce sought damages from the Department and the City for the following claims: “wrongful infliction of emotional distress, bad faith interference in a business contract, abuse of process, [and] related torts.” In addition, as to the Department, he asserted that it “repeatedly engaged in invidious retaliation . . . with malice and in bad faith.” ¶ 26 The district court found that Bruce’s claims either lay in tort or could lie in tort. Thus, because the Department and the City were public entities, the court determined that Bruce’s claims fell within the purview of the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -120, C.R.S. 2020. See § 24-10-106(1), C.R.S. 2020 (The CGIA grants immunity to public entities “from liability in all claims for injury which lie in tort or could lie in 
13 tort . . . except as provided otherwise in this section.”). We agree with the district court’s conclusion as to the applicability of the CGIA, which Bruce does not appear to contest on appeal. ¶ 27 The CGIA requires that “[a]ny person claiming to have suffered an injury by a public entity or by an employee thereof . . . shall file a written notice as provided in this section within one hundred eight-two days after the date of the discovery of the injury.” § 24-
10-109(1), C.R.S. 2020. “‘[T]he statute plainly requires’ a claimant to file this notice with either the governing body of the public entity or the entity’s attorney.” Johnson v. Toohey, 2021 COA 43M, ¶ 9 (quoting Jefferson Cnty. Health Servs. Ass’n v. Feeney, 974 P.2d 1001, 1003 (Colo. 1998)); see also § 24-10-109(3)(a). It is undisputed that Bruce never provided the City or the Department any such notice. Because compliance with the CGIA’s notice provision is “a jurisdictional prerequisite to any action brought under the [CGIA],” the district court properly dismissed his tort claims under C.R.C.P. 12(b)(1). § 24-10-109(1); accord Finnie v. Jefferson Cnty. Sch. Dist. R-1, 79 P.3d 1253, 1255-56 (Colo. 2003); see also Kratzer v. Colo. Intergovernmental Risk Share Agency, 18 P.3d 766, 769 (Colo. App. 2000) (“Because it is undisputed that no 
14 notice of claim was served on defendants, we conclude that plaintiff’s [CGIA] claims should have been dismissed on that basis.”). C. Substantive Due Process Claim ¶ 28 Bruce’s complaint also asserted that he “has a right to own an empty building,” and that he “is being denied that right and due process of law under the Fifth and Fourteenth Amendments to the U.S. constitution.” The district court construed this as a claim made under 42 U.S.C. section 1983 alleging that Bruce had a substantive due process right to own a vacant building, and sections of the RBC requiring repair and permitting demolition of the Building violated that right. Addressing the merits of Bruce’s contention, the court, accepting all of Bruce’s factual allegations as true, concluded that the RBC did not impermissibly infringe on Bruce’s right to substantive due process. Thus, it dismissed Bruce’s claim under C.R.C.P. 12(b)(5). ¶ 29 On appeal, Bruce reiterates that he “is being denied a permit and due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution,” and he asserts conclusory allegations that describes the RBC as “patently unconstitutional.” 
15 But he does not explain why owning a vacant building is a fundamental right guaranteed by the Due Process Clause. Nor does he explain why, if such a right exists under the Federal Constitution, the RBC impermissibly infringed on that right. In fact, Bruce does not even purport to assert with any specificity that the district court’s analysis of his substantive due process claim was erroneous. Thus, to the extent Bruce challenges the district court’s dismissal of his claim, we decline to address it.3 See, e.g., Barnett v. Elite Props. of Am. Inc., 252 P.3d 14, 19 (Colo. App. 2010) (“We will not consider a bald legal proposition presented without argument or development.”). ¶ 30 Moreover, as the district court pointed out, Bruce’s claim as set forth in his complaint was equally deficient. In support of his claim, he merely cited to the Due Process Clause; he offered no developed argument explaining how a right to own a vacant 3 Bruce also appears to suggest, for the first time on appeal, that the RBC violated his procedural due process rights guaranteed by the Colorado Constitution. However, because the issue is not preserved, we do not address it. Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C., 2012 CO 61, ¶ 18 (“It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal.”). 
16 building is recognized in the constitution, and as a result, how he was legally entitled to the relief requested. Thus, while the court dismissed his claim on the merits under C.R.C.P. 12(b)(5), dismissal of the claim was also proper for failure to comply with C.R.C.P. 8(a)(2). See C.R.C.P. 8(a)(2) (“A pleading which sets forth a claim for a relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.”); see also Taylor v. Taylor, 2016 COA 100, ¶ 31 (“An appellate court may . . . affirm on any ground supported by the record.”). D. Impairment of Contract Claim ¶ 31 We turn next to Bruce’s impairment of contract claim, which asserted that the Department unconstitutionally infringed on his contractual right to repair and restore the Building as contemplated in the deed of trust. ¶ 32 The United States Constitution provides that “[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts.” U.S. Const. art. I, § 10, cl. 1. Colorado has a “virtually identical” constitutional provision, Sch. Dist. No. 1 v. Masters, 2018 CO 18, ¶ 16, which provides that “[n]o . . . law impairing the obligation of contracts . . . shall be passed by the general assembly,” Colo. 
17 Const. art. II, § 11. “Colorado courts apply the same three-party inquiry for claims brought under both: ‘(1) does a contractual relationship exist; (2) does the change in the law impair that contractual relationship; and if so, (3) is the impairment substantial?’” Sch. Dist. No. 1, ¶ 16 (quoting Justus v. State, 2014 CO 75, ¶¶ 18-19). “If all three prongs are answered affirmatively, the impairment may nonetheless be constitutional if it is ‘reasonable and necessary to serve an important public purpose.’” Id. (quoting Justus, ¶ 19). ¶ 33 Bruce did not specify what provision of the deed of trust actually granted, as he alleged, “a contractual right . . . to make repairs to the building to restore its condition to time of sale in 2016.” Indeed, as the district court found, no provision in the deed of trust stated as much. Nonetheless, the court assumed, as do we, that Bruce was referring to the following provision: Bruce “may . . . take such action as is necessary to protect Lender’s interest . . . including . . . [paying] . . . repair and maintenance costs and expenses.” ¶ 34 But even if Bruce had established the first prong of the Contracts Clause test, he failed to allege facts that could establish 
18 the second or third prongs, thus entitling him to relief. His complaint identifies no specific ordinance that the Department enacted or changed that affected his alleged contractual rights under the deed of trust.4 And even if we were to assume, as the district court did, that Bruce was referring to sections of the RBC regulating “dangerous building” designations, he did not allege that those sections had been enacted or changed after the subject deed of trust was created. Nor does the record indicate as much. Thus, he failed to allege facts sufficient to establish that there had been any change in the law, yet alone one that had substantially impaired his contractual relationship. Accordingly, the district court properly dismissed his claim under C.R.C.P. 12(b)(5).5 See Sch. Dist. No. 1, ¶ 16; Bewley, ¶ 14. 4 As discussed below, Bruce alluded to a new state law governing foreclosure sales during bankruptcy proceedings. But he did so only in the context of his claims against the Trustee. He did not identify or otherwise describe any specific change in the law in the context of his claim against the Department. 5 The district court dismissed Bruce’s claim on slightly different grounds. It generally assumed that Bruce alleged sufficient facts to satisfy the three prongs of the Contracts Clause test, but it nonetheless appeared to conclude that the relevant sections of the RBC were constitutional because they were “reasonable and necessary to serve an important public purpose.” Justus v. State, 
19 E. Attempts to Compel the Trustee to Record the Deed of Sale ¶ 35 Finally, Bruce raised at least four claims, as we understand them, seeking to compel the Trustee to record a deed of sale, which was voided by the federal bankruptcy automatic stay. We discuss each in turn. 1. Challenge to the Bankruptcy Proceedings ¶ 36 First, to the extent Bruce challenged Graeve’s inclusion of the Building in his bankruptcy filing, the district court properly determined that it had no jurisdiction to consider such a claim. See Bright v. Fred C. Sproul, Inc., 44 Colo. App. 542, 544, 616 P.2d 189, 191 (1980) (“The bankruptcy court’s jurisdiction over the administration of the affairs of an insolvent is essentially exclusive.”). 2. Obligation to Record the Deed of Sale ¶ 37 Second, Bruce generally argued that the Trustee was legally obligated to record a deed of sale. However, as the district court pointed out, the Trustee was statutorily precluded from doing so. 2014 CO 75, ¶ 19 (quoting U.S. Tr. Co. of N.Y. v. New Jersey, 431 U.S. 1, 25 (1977)). However, we may affirm on any ground supported by the record. E.g., Taylor v. Taylor, 2016 COA 100, ¶ 31. 
20 ¶ 38 Section 38-38-109(2)(c), C.R.S. 2020, addresses circumstances where, as here, a foreclosure sale has been requested or is pending but the debtor filed for bankruptcy before the sale was completed. As pertinent here, it provides that [i]f a sale is held in violation of the automatic stay provisions of the federal bankruptcy code . . . and an order is subsequently entered by a bankruptcy court of competent jurisdiction . . . closing the bankruptcy case . . . then the . . . deed of trust . . . being foreclosed shall immediately be deemed reinstated. Immediately upon reinstatement, the power of sale provided therein, if any, shall be deemed revived. § 38-38-109(2)(c)(I). However, to reinitiate the sale, the holder of the deed of trust must notify the public trustee conducting the foreclosure sale of the bankruptcy court’s order in writing “no later than fifty calendar days prior to the last possible sale date pursuant to subsections (1)(a) and (2)(e) of [section 38-38-109].” § 38-38-
109(2)(c)(II). If the holder fails to do so, the public trustee is required to administratively withdraw the sale. § 38-38-
109(2)(c)(III). ¶ 39 The district court correctly determined that the last possible date of sale under section 38-38-109 was November 6, 2019 — 
21 twelve months after the originally designated date. See § 38-38-
109(1)(a) (“No sale shall be continued to a date later than twelve months from the originally designated date in the combined notice, except as provided in subsection (2) of this section.”). Thus, to reinitiate the sale, Bruce was required to notify the Trustee of the bankruptcy court’s order closing Graeve’s bankruptcy case by September 17, 2019. See § 38-38-109(2)(c)(II). It is undisputed that Bruce failed to do so. Thus, as the district court concluded, the Trustee was required to administratively withdraw the sale under section 38-38-109(2)(c)(III). Accordingly, the court properly dismissed Bruce’s claim under C.R.C.P. 12(b)(5). See Bewley, ¶ 14. 3. Ex Post Facto Claim ¶ 40 Third, apparently recognizing that he failed to comply with section 38-38-109(2)(c), Bruce argued that the statute violated the Colorado Constitution’s prohibition against ex post facto laws. See Colo. Const. art. II, § 11 (“No ex post facto law . . . shall be passed by the general assembly.”). However, the statute, not being criminal in nature, could not be considered an ex post facto law. See, e.g., People v. DeWitt, 275 P.3d 728, 731 (Colo. App. 2011) (An ex post facto law is one that “imposes a punishment for an act which was 
22 not punishable at the time it was committed; or imposes additional punishment to that then prescribed.” (quoting Weaver v. Graham, 450 U.S. 24, 28 (1981))). Thus, the district court properly dismissed Bruce’s claim under C.R.C.P. 12(b)(5). See Bewley, ¶ 14. 4. Impairment of Contract Claim ¶ 41 Finally, Bruce also challenged the constitutionality of section 38-38-109(2)(c) under the Contracts Clause. Specifically, he argued that, as applied, the statute “interfered with the obligations of contract contained in the [deed of trust].” But the effect of the statute was to preclude the Trustee from recording a deed of sale. And the deed of trust contained no provision requiring the Trustee to do so. Nor did Bruce make any such allegation in his complaint. Thus, Bruce did not establish any discernable violation of the Contracts Clause. See Sch. Dist. No. 1, ¶ 16 (an impairment of contract claim must show that a change in law substantially impaired a contractual relationship). Accordingly, the district court 
23 properly dismissed the claim under C.R.C.P. 12(b)(5).6 See Bewley, ¶ 14. VI. Remaining Contentions ¶ 42 To the extent Bruce purports to advance other contentions on appeal, we decline to review them because they are not properly before us, they are undeveloped, and Bruce cites no authority to support them. See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C., 2012 CO 61, ¶ 18 (“It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal.”); Barnett, 252 P.3d at 19 (“We will not consider a bald legal proposition presented without argument or development.”); Vallagio at Inverness Residential Condo. Ass’n, Inc. v. Metro. Homes, Inc., 2017 CO 69, ¶¶ 39-40 (we do not consider undeveloped arguments lacking citation to controlling authority). 6 The district court also appears to have reviewed a claim for breach of contract against the Trustee premised on a contractual relationship created by the deed of trust. However, we agree with the district court that to the extent Bruce raised such a claim, he did so merely in one conclusory sentence. Thus, the court properly dismissed the claim under C.R.C.P. 12(b)(5). See Warne v. Hall, 2016 CO 50, ¶ 9. 
24 VII. Conclusion ¶ 43 The judgment is affirmed. JUDGE WELLING and JUDGE JOHNSON concur.